[No. 30157. Department Two. July 3, 1947.]

HAROLD H. HIGGINS, *Respondent,* v. MAUD M. EGBERT,
*Appellant.*[1]

*Lawrence H. Brown* and *Howard E. Phillips,* for appellant.

*Joseph A. Albi,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover a real
estate broker's commission. A trial before the court, with-
out a jury, resulted in findings of fact, conclusions of law,

[1]Reported in 182 P. (2d) 58.

and judgment in favor of plaintiff. The defendant appealed.

Respondent, Harold H. Higgins, was a licensed real estate broker at Hartline, Washington, about ninety miles distant from Spokane. Appellant, Maud Egbert, a widow living in Spokane, owned one hundred sixty acres of farm land near Marlin, approximately forty-five miles southeast of Hartline.

On February 18, 1946, respondent called on appellant at her home for the purpose of obtaining from her a listing of her land for sale. The parties then and there entered into an oral agreement whereby respondent was to have an exclusive listing for a specified period in which to sell the farm at a price of twelve thousand dollars. Respondent was to receive a commission of five per cent for procuring a purchaser. There is a dispute in the evidence as to what length of time was orally agreed upon by the parties as constituting the term of the exclusive listing. Respondent testified that it was to be sixty days; appellant testified that it was to be only thirty days.

At the conclusion of this conference, respondent returned to Hartline and, shortly thereafter, prepared what is termed a listing agreement, on a form regularly used by him, containing a description of the property, the terms of the proposed sale, a promise on the part of appellant to pay respondent a commission of five per cent for procuring a purchaser, and other data. The length of time designated therein as the term of the exclusive listing was "60 days." The instrument was dated February 18, 1946, the same date as that of the oral agreement. On the following day, February 19th, respondent sent the prepared listing agreement to the appellant by mail, accompanying it with a letter reading as follows:

"Mrs. Maude Egbert                    Febr, 19th, 1946
"Spokane Washington
"Dear Mrs. Egbert: Inclosed you will find listing as per our agreement of yestuday morning, please sign the same and return to me, as I have great hopes of being able to bring up the money to you very soon.

"Thanking you kindly for this listing and assureing you that I am now at work trying to sell the same,

"Yours very truly

"H. H. Higgins"

At the time of arrival of this letter in Spokane, and for several days thereafter, appellant was absent from the city, and she did not personally receive the communication until February 26th. She thereafter made some ten or twelve alterations in the listing agreement, one of them being a change in the term of exclusive listing from sixty days to thirty days. However, she left the date of the instrument, February 18, 1946, unaltered. After signing the paper in its altered form, appellant assertedly mailed it back to respondent on February 27th. Accompanying the returned instrument was a letter reading:

"2517 E. Pac. Ave.,

"Mr. H. H. Higgins,     Spokane 15, Wn.

"Hartline, Wn.     Feb. 27, 1946

"Mr. Higgins: I am returning contract with 30 days specified as limit of time for exclusive listing as I understood you to say if you could handle it at all you could do so within from a week to a month.

"Respectfully yours,

"Mrs. A. J. Egbert"

Despite the date of February 27th as it appeared on appellant's letter, the fact is, as found by the trial court, that the postmark on the envelope containing the letter and the listing agreement bears date March 4, 1946. It was received by respondent on March 5th.

On receipt of the communication from appellant, respondent, by means of a pencil notation, changed the date of the listing agreement from February *18th,* as it originally read, to February *27th,* the date of appellant's letter of transmittal mentioned above. No notice of this change was ever given to appellant, and no reply to appellant's letter of February 27th was ever made by respondent. The form of the instrument contained no place for signature by respondent, and, in fact, it was never signed, nor intended to be signed, by him, but only by appellant.

Respondent endeavored to procure a purchaser of appellant's property on the terms indicated in the listing agreement, but, up until March 22, 1946, his efforts were fruitless. On that day, however, he did procure a person who concededly was ready, able, and willing to purchase the property on the prescribed terms. On that same day, the prospective purchaser paid to respondent earnest money in the sum of one thousand dollars, evidenced by a check of that date drawn to the order of appellant. Respondent at once telegraphed to appellant as follows: "Place sold. Have earnest money paid down. Will see you Monday."

On the following Monday, March 25th, respondent sent the check to appellant, accompanying it with a letter in which he stated that the purchaser would pay the balance of eleven thousand dollars as soon as the necessary documents were ready.

Appellant declined to accept the check and refused to consummate the sale of the land, for the reason that on March 23rd she had sold the property to a purchaser of her own finding, at a price of $12,800.

After making repeated demands for the commission claimed to be due him, and not having been paid anything, respondent instituted this action.

The sole question involved in this case is whether the thirty-day period provided in the listing instrument is to be held as commencing on February 18th, the date which it originally bore, or whether it is to be interpreted as commencing either on February 27th, the date subsequently penciled in by respondent, or else on some later date. If February 18th be the controlling date, then, as appellant contends, respondent was two days late in procuring a purchaser. If, on the other hand, February 27th, or some later date, be determined to control, as respondent contends, then respondent was well within the thirty-day period.

The trial court held that March 5th, the day on which respondent received appellant's letter of February 27th returning the listing agreement, was the proper date from which to compute the time. In this connection, the trial

court also held that the listing agreement and appellant's letter of February 27th, quoted above, transmitting the agreement to respondent, should be construed together as constituting the full and final "agreement" between the parties. For the purposes of this case, we will proceed upon the theory that this latter holding was correct.

It is well, in the beginning, however, to have in mind the nature of written instruments such as the one here involved. Listing agreements for the sale of real property fall within the class of instruments spoken of as unilateral contracts, consisting of an offer or promise on the part of one party, or parties, on one side, only, and performance of its terms by another party or parties. Definitions and illustrations of such agreements are found in the following statement in 12 Am. Jur. 506, Contracts, § 8:

"A contract is unilateral when one party who makes a promise has received a consideration other than a promise to make the contract binding. A unilateral contract is also defined as one in which there is a promise on one side only, the consideration therefor being an act. . . .

"The term 'unilateral' has also been used to describe what is sometimes denominated a contract, but which in reality is merely an offer to contract, as, for example, a promise to pay one for services if he should perform them, the latter being under no obligation to perform such services. . . . Still another illustration is an agreement signed by an owner of property to pay a broker commissions in the event the broker finds a purchaser for the property or in the event of a sale by either the owner or the broker. After the act upon which the promise is based is performed, a valid contract comes into existence."

See, also, Restatement, Contracts, § 12.

In two of our earlier decisions we characterized such a contract or memorandum of agreement as being no more than a continuing offer, and subject to revocation at any time. *Herrin v. Scandinavian-American Bank,* 65 Wash. 569, 118 Pac. 648; *Lasswell v. Anderson,* 127 Wash. 591, 221 Pac. 300.

The distinction between a unilateral contract and a bilateral contract is that, in the former, the offer or

promise of the one party does not become binding or enforcible until there is performance by the other party, whereas, in the latter, it is not performance which makes the contract binding, but rather the giving of a promise by the one party for the promise of the other.

The theory upon which the trial court's decision was based, and upon which respondent now stands, is that when appellant changed certain terms in the original form of listing, she thereby made a new offer, as of that date, for a listing to cover a period of thirty days from the time of transmittal of such offer to the respondent.

It may be conceded that when appellant signed the listing agreement and delivered it to the respondent, she thereby for the first time gave life or legal effect to that instrument. Correspondingly, until that time respondent had nothing whatever upon which he could hold appellant liable for any commission earned by him.

However, appellant had the right to incorporate in her offer any terms or conditions she may have desired. She could select any date from which the thirty-day period was to run, regardless of whether or not the fixing of such date would result in giving respondent less than thirty days actual working time. No question of fraud is here involved, but simply a question of what appellant had the right to do, and did do. She indicated very definitely the commencement date of her listing offer by leaving it as it originally stood, namely, February 18th, although in several other respects she made changes in the instrument.

When respondent received that instrument on March 5th, he could have pursued any one of several courses: (1) He could have made an effort to perform the terms of the offer within the restricted time allotted to him; (2) he could have endeavored to persuade appellant to extend, in writing, the time allowed; or (3) he could have declined to do anything further with reference to the sale of the property. But he could not, by changing the date of the instrument, create what would amount to a new offer from the appellant to himself, nor alter the only one she had ever made to him.

We recognize the unfortunate position in which respondent is placed. He stands to lose the commission which he would otherwise have earned had he consummated the deal with his prospective purchaser two days earlier. But, in law, he failed of performance as completely and effectually as though the delay were a month or a year. Nor is the result quite as harsh as at first blush it might seem. The fact is, as appears by respondent's letter of February 19th, that he began his efforts to sell the property, not on March 5th, when he received the listing agreement from the appellant, nor on February 27th, the date penciled in by him, but actually on February 19th, the day he himself sent the proposed agreement to the appellant for her signature. In that sense, at least, he utilized and had the benefit of the full thirty days indicated in the listing agreement.

The judgment is reversed, with direction to the trial court to dismiss the action.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.