27 P.3d 257 (2001)
107 Wash.App. 437
Traci HAUBER, individually, as Personal Representative of the Estate of Rusty Hauber, and as guardian of Tyson Scott Hauber and Tori Lee Hauber, minor children, Appellant,
v.
COUNTY OF YAKIMA, a political subdivision of the State of Washington, Respondent,
Roza Irrigation District, a Washington corporation; and John Does 1 through 10, Defendants.
No. 19458-2-III.
Court of Appeals of Washington, Division 3, Panel Two.
July 24, 2001.
*258 Duacan C. Turner, Sandrin B. Rasmussen, Donald H. Mullins, Badgley-Mullins Law Group, Seattle, for Appellant.
Alfred G. Schweppe, Deputy Prosecuting Attorney, James S. Berg, James S. Berg, PLLC, Yakima, for Respondent.
SCHULTHEIS, J.
Compensation for an emergency worker who dies while performing emergency services is limited by statute to the benefits allowed under chapter 38.52 RCW. RCW 38.52.190, .260, .290. The chapter prohibits additional recovery from the county that registered the emergency worker or that directed his or her activities. RCW 38.52.190. If, however, a city, county, or state employee performs the emergency duties as a normal part of his or her job, or if the employee is responding under the provisions of a mutual aid agreement, he or she is not covered by the compensation provisions of chapter 38.52 RCW. WAC-118-04-080.
Rusty Hauber was a registered volunteer diver for the Yakima County Search and Rescue team. He was also a City of Yakima fire fighter. While on duty as a fire fighter, Mr. Hauber was called to a search and rescue emergency mission and died while diving. His widow sued Yakima County and other entities. On a motion for summary judgment, the trial court dismissed Ms. Hauber's claims against the county, concluding that chapter 38.52 RCW immunizes the county from any claims other than the benefits afforded by the statute. On appeal, Ms. Hauber contends issues of material fact preclude summary judgment. In particular, she contends the record shows that Mr. Hauber responded to the emergency as an employee of the city and in response to a mutual aid call from the county. We find that the record does not support her claims, and affirm.

FACTS
Pursuant to RCW 38.52.070, the political subdivisions in Yakima County developed the Yakima Valley Comprehensive Emergency Management Plan.[1] The purpose of the plan *259 was to coordinate services to respond to "natural and man-made disasters." Clerk's Papers (CP) at 162. According to the plan, "[l]ocally organized and trained volunteer groups will provide the majority of specialized emergency manpower resources." CP at 258. One of the emergency services created was Yakima County Search and Rescue (S & R), a group of volunteer registered emergency workers under the supervision and control of the sheriff's office. RCW 38.52.400(1). A subdivision of the S & R is the dive team, whose volunteer members are required to work for an emergency response organization such as a fire or police department.
Mr. Hauber registered as a member of the S & R dive team in 1992 and served as a volunteer on S & R missions from that date until his death. While he was on duty as a fire fighter for the city, Mr. Hauber was on at least one other occasion called out on an S & R mission.
On Saturday morning, March 15, 1997, two divers entered an irrigation siphon in the Roza Irrigation District to clean out debris, including abandoned vehicles. When the divers had not returned to the surface after an hour, an assistant manager for the irrigation district called 911. The 911 dispatcher called Yakima County Fire District 5 just before 11 a.m. and reported the incident. Fire District 5 then called the county sheriff's office and requested the S & R dive team to respond. The dive team leader was George Town, a sergeant in the county sheriff's office. Sergeant Town began calling the members of Mr. Hauber's dive team. He called Mr. Hauber's home and was told by Ms. Hauber that Mr. Hauber was on duty at the city fire station. When Sergeant Town called the fire station, he asked Mr. Hauber's supervisor, Battalion Chief Richard Andring, if Mr. Hauber could go on the dive. Chief Andring asked if this was a formal request. Sergeant Town said yes and Chief Andring gave permission for Mr. Hauber to respond.
Mr. Hauber left in his personal vehicle, picked up his diving gear at his home, and drove to the siphon. He met with another member of his dive team, J.R. Mestaz, at around 12:30 P.M. and they entered the siphon in their dive suits to attempt to recover the bodies of the other divers. Mr. Hauber and Mr. Mestaz agreed to return to the surface in 30 minutes. In less than that time, the crew on shore noticed that air bubbles had ceased to appear, and backup divers were sent to find out what happened. The backup divers first brought up Mr. Mestaz and then Mr. Hauber, who was declared dead about an hour later. Mr. Mestaz died two or three days later.
Ms. Hauber, as the personal representative of her husband's estate, received federal benefits for the line-of-duty death of a fire fighter and state Department of Labor and Industries death benefits. In May 1997 she filed a claim pursuant to chapter 38.52 RCW for damage to Mr. Hauber's diving suit. The claim form stated that the claimant had to be a registered emergency worker pursuant to chapter 38.52 RCW and had to be working under emergency management authority at the time of the damage. The state Emergency Management Division paid the claim in September 1997.
On October 22, 1998, Ms. Hauber filed suit against Yakima County and the Roza Irrigation District for wrongful death and negligence.[2] The county moved for summary judgment dismissal of all claims against it in May 2000. After a hearing, the court granted the motion and dismissed Ms. Hauber's claims against the county as precluded by chapter 38.52 RCW. Judgment was entered for the county with attorney fees assessed against Ms. Hauber. This appeal followed.

*260 DISCUSSION
The question before this court is whether the trial court erred in concluding as a matter of law that Mr. Hauber was not working as a city fire fighter responding to a mutual aid request at the time of his death, but was an emergency worker volunteering for the county S & R team. If Mr. Hauber was an emergency worker, then his survivors could not recover anything from the county beyond the compensation provided in chapter 38.52 RCW. RCW 38.52.190. No Washington cases interpret or apply this provision.
The Washington Emergency Management Act, chapter 38.52 RCW, was enacted by the Legislature to ensure administration of state and federal programs providing preparation for disasters, to preserve the lives and property of the people of the state, and to ensure adequate support for search and rescue operations. RCW 38.52.020(1). To those ends, the statute authorizes the creation of local organizations for emergency management; provides for mutual aid among the political subdivisions of the state; and provides compensation for emergency workers who suffer injury, economic harm, or death. RCW 38.52.020(1)(a), (c), (d). An emergency worker is defined by the statute as any person (1) registered with a local emergency management organization or the department of community development and who holds an identification card for the purpose of engaging in authorized emergency management activities; or (2) employed by the state, city, county, or town who is called upon to perform emergency management activities. RCW 38.52.010(4).
Yakima County's S & R team was created pursuant to the comprehensive emergency management plan and the team was placed under the supervision of the sheriff's office. Mr. Hauber registered as an emergency worker in 1992 and received an identification card. RCW 38.52.010(4). The director of the Yakima Valley Office of Emergency Management declared that Mr. Hauber was properly registered and carrying a valid card on the day he died. Ms. Hauber argued that Mr. Hauber's card was valid only for three years and was never re-issued, but the witness supporting this assertion also stated that although cards are usually re-issued every three years, they remain valid beyond that time because the holder's number remains the same. Even viewing the evidence in the light most favorable to Ms. Hauber as we must in review of a summary judgmentwe find no real dispute that Mr. Hauber was a properly registered emergency worker and a member of the county S & R team. CR 56; DeYoung v. Providence Med. Ctr., 136 Wash.2d 136, 140, 960 P.2d 919 (1998).
Compensation is provided to an emergency worker for any injury or death arising out of and occurring in the course of his or her activities as an emergency worker. RCW 38.52.260. The amount of the emergency worker's compensation will be no greater than the amount allowable under the Workers' Compensation Act, chapter 51.32 RCW. RCW 38.52.290. If the emergency worker is eligible for benefits under another compensation plan, and receives those benefits, then he or she will not receive compensation under chapter 38.52 RCW. RCW 38.52.340. However, if the compensation from another plan is less than would have been available under chapter 38.52 RCW, the emergency worker is entitled to receive the deficiency under this chapter. RCW 38.52.340.
In order to qualify for compensation under chapter 38.52 RCW, the emergency worker must have been participating in an authorized mission under the direction and control of an authorized official. WAC 118-04-300(2). "Mission" is defined as "a distinct assignment of personnel and equipment to achieve a set of tasks related to an incident, emergency, disaster, or search and rescue operation that occurs under the direction and control of a local authorized official." WAC 118-04-060(10). The S & R dive on March 15, 1997 clearly qualified as a mission for the purposes of chapter 38.52 RCW. Two ways an official is "authorized" are (1) if he or she is recognized in a local comprehensive emergency management plan as an S & R official, or (2) if he or she is the chief law enforcement official of a county, city, or town. WAC 118-04-060(1). Sergeant George Town of the county sheriff's department *261 was the dive team leader and was duly authorized to direct the mission on March 15, 1997.
Employees of the state or any political subdivision are not eligible for compensation as emergency workers if, during an emergency, "they are performing their normal duties in the geographic area they are normally assigned to work or in another geographic area under the provisions of a mutual aid agreement." WAC 118-04-080(2)(b). Whether a particular registered emergency worker is entitled to compensation under chapter 38.52 RCW is crucial to the application of the statute's limited immunity provision:
Except as provided in this chapter, an emergency worker and his dependents shall have no right to receive compensation from the state, from the agency, from the local organization for emergency management with which he is registered, or from the county or city which has empowered the local organization for emergency management to register him and direct his activities, for an injury or death arising out of and occurring in the course of his activities as an emergency worker.
RCW 38.52.190. Similar to the compromise of rights found in Washington's Industrial Insurance Act, Title 51 RCW, the emergency management act ensures compensation for claims that have no common law liability, in exchange for an emergency worker's lower rate of recovery. See Dennis v. Dep't of Labor & Indus., 109 Wash.2d 467, 469, 745 P.2d 1295 (1987) (workers' compensation). The emergency worker is guaranteed sure and certain relief, while the local organization for emergency management is protected from liability beyond the compensation provided in the statute. Id. at 470, 745 P.2d 1295; RCW 38.52.190.
In this case, there is no dispute that Mr. Hauber was participating in an authorized mission at the time of his death. The pivotal question is whether he participated as a fire fighter doing his normal duties in his normal geographic area or responding to a mutual aid request, or whether he participated as an emergency worker registered with the S & R dive team.
I. Normal duties in the normal geographic work area. In response to the county's motion for summary judgment, Ms. Hauber argued that diving was one of Mr. Hauber's normal duties as a city fire fighter. Mr. Hauber was a member of the fire department's Technical Rescue Team. Ms. Hauber submitted the team's training materials on still water and swift water rescue to show that Mr. Hauber was expected to use his diving skills in water rescue for the city. These materials do not support her case, however. Diving is not included as a technical skill for the fire department rescue team. At one point in the still water rescue manual it states, "we are not dive team people," and the description of the swift water rescue techniques does not mention diving. CP at 612, 618. Mr. Hauber never dived for the fire department. The one other time he dived while he was on duty at the fire department was when he participated in another S & R dive team mission. He owned his diving equipment and he kept it either at home or in his private car.
Ms. Hauber admits that the Roza Canal where Mr. Hauber lost his life is outside the city fire department's jurisdiction. Although she contends it was not uncommon for him to respond to a mutual aid request in that areapursuant to the mutual aid agreement among the city and county fire departmentsshe produces no evidence that the Roza Canal was in his normal geographic work area. In short, Ms. Hauber fails to bring forth evidence to create a question of fact regarding Mr. Hauber's duties as a city fire fighter. DeYoung, 136 Wash.2d at 140, 960 P.2d 919. She provides no specific evidence that Mr. Hauber's normal work duties included diving outside the city limits.
II. Outside the normal geographic work area, but in response to a mutual aid agreement. Ms. Hauber contends Mr. Hauber responded to the March 1997 emergency pursuant to the city fire department's mutual aid agreement with county Fire District 5. She also argues that the Yakima Valley Comprehensive Emergency Management Plan constitutes a mutual aid agreement between the city and the county.
*262 The record shows that the city fire department entered into mutual aid agreements with several counties for emergency medical services and with cities and towns in Yakima County for fire suppression and emergency medical services. These mutual aid agreements generally complied with former RCW 38.52.090(2) (1995), which required a written agreement containing certain provisions.[3] These agreements do not, however, provide for anything other than fire suppression and emergency medical services. No search and rescue, water rescue, or diving activities are included in the agreements.
Further, Ms. Hauber provides no credible evidence that Fire District 5 actually requested mutual aid from the city fire department. She presents dispatch records showing a 911 call that indicates Fire District 5 requested mutual aid from the city fire department, but she fails to explain why the records show that the request came at 2:52 P.M., four hours after the original 911 call was received by Fire District 5 and half an hour after Mr. Hauber was declared dead. The battalion chief of Fire District 5 stated that he did not initiate a mutual aid call to the city fire department, but that he asked the dispatcher to notify the county sheriff's office that the S & R team was needed.
Outside the mutual aid agreements for emergency medical services and fire suppression, Ms. Hauber presents no other documents that constitute mutual aid agreements relevant to this action. As the trial court found, the Yakima Valley Comprehensive Emergency Management Plan is not a mutual aid agreement. The plan provides a framework for joint operation of emergency services in the event of "natural disaster and man-caused disaster." CP at 152. One of the duties of the plan's emergency services council is to "review and recommend for adoption emergency services and mutual aid plans and agreements and such resolutions and rules and regulations as are necessary to implement such plans and agreements." CP at 150. Services provided to the cities and towns participating in the plan include coordination of operational activities and plans; effective utilization of resources within and outside the Yakima Valley; recruitment of volunteers and compensation for their injuries; and public information and warning programs. The clear intent of the plan is to coordinate and fund emergency services among the political subdivisions of the Yakima Valley area. It provides no promises exchanged for promises on specific mutual aid terms that would constitute a binding mutual aid agreement. See Higgins v. Egbert, 28 Wash.2d 313, 317-18, 182 P.2d 58 (1947) (bilateral contract formation).
A defendant is entitled to summary judgment when he or she shows an absence of evidence supporting an issue material to the plaintiff's case. Las v. Yellow Front Stores, Inc., 66 Wash.App. 196, 198, 831 P.2d 744 (1992). After the defendant challenges the sufficiency of the evidence regarding an essential element, the inquiry shifts to the plaintiff, who must set forth specific facts showing that a genuine issue exists. Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225-26, 770 P.2d 182 (1989). Ms. Hauber fails to provide specific evidence that Mr. Hauber responded to the S & R dive team mission as a city fire fighter doing his normal duties in his normal geographic work area or as a city fire fighter complying with a mutual aid agreement. Consequently, the trial court did not err in granting the county's motion for summary judgment on this basis. CR 56(c); Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993).
Alternatively, Ms. Hauber contends she is not subject to the immunity of RCW 38.52.190 because that provision conflicts with her rights under RCW 38.52.080. According to RCW 38.52.080(1),
*263 [w]henever the employees of any political subdivision are rendering outside aid pursuant to the authority contained in RCW 38.52.070 such employees shall have the same powers, duties, rights, privileges, and immunities as if they were performing their duties in the political subdivisions in which they are normally employed.
Ms. Hauber contends Mr. Hauber was in effect a "loaned servant" for the county, and pursuant to RCW 41.26.281, he maintained a right to sue the borrowing employer for the excess of his damages over the amount he received from workers' compensation.[4] This argument is unpersuasive.
When two statutes appear to conflict, the more specific statute prevails. In re Estate of Kerr, 134 Wash.2d 328, 337, 949 P.2d 810 (1998). RCW 38.52.080(1) guarantees city and county employees that they will maintain their general duties and rights whenever they render aid outside their normal employment. RCW 38.52.190, however, specifically limits the emergency worker's compensation to what is provided in the chapter. The specific nature of this provision preponderates over the general rights found in RCW 38.52.080(1). Moreover, Mr. Hauber was not a "loaned servant" because no employment relationship existed between him and the county. See Smick v. Burnup & Sims, 35 Wash.App. 276, 277-78, 666 P.2d 926 (1983). By all accounts, Mr. Hauber was a volunteer for the S & R dive team. Ms. Hauber presents no evidence to show that Mr. Hauber consented to an employment relationship with the county when he responded to the S & R mission. Id. at 278, 666 P.2d 926 (the test for an employment relationship for the purposes of workers' compensation); see also Jackson v. Harvey, 72 Wash.App. 507, 515, 864 P.2d 975 (1994). Summary judgment was appropriate on this basis as well.

ATTORNEY FEES AND COSTS
Yakima County requests reasonable attorney fees under RAP 18.1 and costs under RAP 14.2. As the prevailing party on appeal, the county is entitled to statutory attorney fees and costs. RAP 14.2, 14.3, 18.1.
Affirmed.
BROWN, A.C.J., and KATO, J., concur.
NOTES
[1] Former RCW 38.52.070(1) (1986) provided in part that:

"Each political subdivision of this state is hereby authorized and directed to establish a local organization for emergency management in accordance with the state emergency management plan and program.... Each local organization for emergency management shall perform emergency management functions within the territorial limits of the political subdivision within which it is organized, and, in addition, shall conduct such functions outside of such territorial limits as may be required pursuant to the provisions of this chapter."
[2] The complaint is not contained in the record.
[3] Former RCW 38.52.090 was repealed and RCW 38.52.091 was created effective July 27, 1997. Laws of 1997, ch. 195, § 1. Ms. Hauber contends the statute's writing requirements apply only to mutual aid agreements between states, noting that the "Authorization" provision specifically relates only to the constitutional support for compacts with another state. The statute clearly provided, however, that all arrangements must comply with the requirements of the two "compacts" contained in the provision, one for civil defense and disaster, and the other for mutual aid. Former RCW 38.52.090(2) (1995).
[4] Under RCW 41.26.281, any member of the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act who has been injured by the negligent act or omission of a governmental employer may receive benefits under the statute and may sue the employer for any excess of damages over the benefits.