[No. 22765-1-III. Division Three. March 29, 2005.]

WESLEY C. FLOWER, *Appellant*, v. T.R.A. INDUSTRIES, INC., ET AL., *Respondents*.

14

18

20

*Burke D. Jackowich* and *Michael J. Hines* (of *Lukins & Annis, P.S.*), for appellant.

*John R. Nelson* (of *Foster Pepper Shefelman, P.L.L.C.*), for respondents.

¶1 SCHULTHEIS, J. — Wesley Flower appeals the trial court's summary dismissal of his action against his former employer Huntwood Industries, Inc., (Huntwood) for breach of employment contract, promissory estoppel, and negligent misrepresentation. Because material issues of fact were presented concerning these matters, we reverse and remand. The denial of Mr. Flower's cross-motion for summary judgment on a specific contract issue, which he also appeals, was improperly denied. We therefore reverse that order and remand for entry of a judgment for the relief requested, together with double damages and attorney fees. Finally, the trial court abused its discretion by placing restrictions on Mr. Flower's discovery that permitted Huntwood to avoid its CR 30(b)(6) deposition. We therefore reverse its protective order.

## FACTS

¶2 In March 2002, Tim Hunt, president of Huntwood, contacted Mr. Flower about a position with Huntwood, a cabinet manufacturer. In April, Huntwood paid for Mr. Flower, who was then living in Alabama, to travel to Huntwood offices in Arizona and Washington. At a dinner

meeting, Mr. Hunt offered Mr. Flower a position as the director of dealer sales for Huntwood in Washington. In a previous sales position with a cabinet maker that he had relocated to take, Mr. Flower's sales position had been eliminated when the management had changed after a buyout. Mr. Flower made clear his reluctance to relocate without a secure, long-term future with Huntwood. Mr. Hunt assured Mr. Flower that his biggest fault was keeping employees rather than letting them go, even if they underperformed, and Mr. Flower would not be discharged without just cause or anything short of serious misconduct. Mr. Hunt wrote down some of the details of his offer of employment to Mr. Flower on Huntwood stationery including salary over a three-year period ($100,000 for the first year, $110,000 the second, and $120,000 the third year); a $10,000 signing bonus; a moving allowance; medical coverage; car allowance; three weeks' vacation for the first year; one week's paid leave for the move; and a bonus program subject to further discussions.

¶3 Mr. Flower returned home and discussed the move with his family. Over the next week, Mr. Flower received phone calls and letters from other Huntwood employees encouraging him to accept the offer. Mr. Flower accepted in mid-April 2002, in a telephone conversation with Mr. Hunt. After he accepted his position, Mr. Flower sold his home in Alabama and prepared to move his family. His daughter turned down a scholarship at a private East Coast school to move with the family. Mr. Flower enrolled his daughter at Gonzaga University. He consulted a builder for a house and signed a six-month lease on an apartment.

¶4 Mr. Flower started work on May 13, 2002. Mr. Flower received a number of employment documents that he signed on that date. Among those was an "Employee Receipt and Acknowledgment of Employee Handbook." Clerk's Papers (CP) at 277. By signature of the document, the employee acknowledged receipt of a copy of the employee handbook and the employee's understanding that (1) the policies, practices, or benefits within the handbook could be

changed by Huntwood at any time; (2) the employee was employed "at-will" and could be terminated at any time, for any reason or no reason, with or without notice; and (3) the employee had no contract, expressed or implied, with Huntwood that would change the "at-will" relationship. CP at 277. Based on the prior assurances to the contrary, Mr. Flower did not believe that the at-will provisions applied to him.

¶5 On June 4, 2002, Mr. Flower met with Mr. Hunt. Together they reviewed a document handwritten by Mr. Hunt captioned "Terms of employment." CP at 271. Mr. Hunt asked Mr. Flower, in exchange for a guaranty that he would not be fired for anything short of serious misconduct, to agree to repay the moving expenses if Mr. Flower decided to leave within two years of his hire. They ultimately agreed to reimbursement if Mr. Flower left within one year. Mr. Hunt made that change to the document and initialed it. The terms of employment also included the matters the parties discussed on the first meeting concerning salary over a three-year period; medical coverage; car allowance; three weeks' vacation for the first year; one week's paid leave for the move; and a bonus program subject to further discussions. The document also provided for the $10,000 signing bonus and $10,000 for moving expenses. The bonus was to be reduced by any amount of moving expenses over $10,000.

¶6 Approximately one month after starting work, Mr. Flower asked for a meeting with Mr. Hunt. He asked whether Mr. Hunt was satisfied with his performance. Mr. Hunt told him that he was doing fine.

¶7 On July 17, 2002, Mr. Hunt called Mr. Flower into the office and terminated him from his position as director of dealer sales. Mr. Hunt mentioned the possibility of giving Mr. Flower an area to work as an independent sales agent. He refused to pay Mr. Flower the $10,000 signing bonus.

¶8 Mr. Flower filed suit alleging breach of contract, promissory estoppel, violations of wage statutes, and negligent misrepresentation. Huntwood answered with a de-

nial of the claims. It counterclaimed for breach of contract and conversion alleging Mr. Flower failed to repay expenses and had misappropriated company funds.

¶9 Mr. Flower took Mr. Hunt's deposition. Later that day, Mr. Flower noted a CR 30(b)(6) deposition of Huntwood. Two weeks before the scheduled deposition, Huntwood designated Mr. Hunt as its CR 30(b)(6) representative. Then Huntwood refused to make Mr. Hunt available because his deposition had already been taken. Huntwood moved for a protective order. The trial court granted the motion. The judge limited Mr. Flower's discovery of Huntwood to requests for admission and interrogatories. It allowed him to renew his request for a CR 30(b)(6) deposition if he was not able to obtain the information he sought with the limitations.

¶10 Huntwood moved for summary dismissal of Mr. Flower's claims. Mr. Flower filed a cross-motion regarding the $10,000 signing bonus. The trial court granted Huntwood's motion for summary judgment and denied Mr. Flower's cross-motion. Huntwood voluntarily dismissed its counterclaims. Mr. Flower appeals the summary dismissal and denial of his cross-motion as well as the imposition of discovery limitations.

## ANALYSIS

### 1. Summary dismissal

¶11 "A motion for summary judgment may be granted only if, 'after viewing all the pleadings, affidavits, depositions, admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party,' the trial court finds, '(1) that there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment as a matter of law'." *Higgins v. Stafford*, 123 Wn.2d 160, 168-69, 866 P.2d 31 (1994) (quoting *Peterick v. State*, 22 Wn. App. 163, 180-81, 589 P.2d 250

26

(1977), *overruled on other grounds by Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 709 P.2d 793 (1985)). After the moving party has produced evidence showing that no factual dispute exists that might affect a trial's outcome, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue of material fact. *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997). We review summary judgments de novo, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Hubbard v. Spokane County*, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002).

¶12 As a preliminary matter, Huntwood claims that Mr. Flower has no right of action because he was not discharged; he quit rather than accept a different position. Huntwood asserts that there is no right of action for "wrongful transfer." *See White v. State*, 131 Wn.2d 1, 929 P.2d 396 (1997). However, as Mr. Flower points out, Mr. Hunt testified that he fired Mr. Flower. Then, after discharging him, Mr. Hunt did not offer him another position of employment with the company. Rather, he made a vague offer by asking "if he was interested [in representing Huntwood] in the east [United States] on commission or something like that." CP at 477. Mr. Flower contends that this is a position of an independent contractor rather than an employee. *See Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 119, 52 P.3d 472 (2002) (quoting RESTATEMENT (SECOND) OF AGENCY §§ 2(2), (3) (1958)). Viewing the evidence in the light most favorable to Mr. Flower, he has, at a minimum, presented a genuine issue of fact as to whether he was terminated.

¶13 We now examine the parties' contractual relationship. An employment cont act that is indefinite as to duration is terminable at will by either the employer or employee. *Thompson v. St. Reg Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984); *Wi bear v. Boeing Co.*, 75 Wn. App. 870, 876, 880 P.2d 101( 1994). However, such an agreement is terminable by the employer only for cause if

(1) there is an expressed or implied agreement to that effect or (2) the employee gives consideration in addition to the contemplated service. *Thompson*, 102 Wn.2d at 223; *Winspear*, 75 Wn. App. at 880-81.

¶14 "Employment contracts are governed by the same rules as other contracts." *Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 298, 890 P.2d 480 (1995). "The law recognizes, as a matter of classification, two kinds of contracts—bilateral and unilateral." *Cook v. Johnson*, 37 Wn.2d 19, 23, 221 P.2d 525 (1950). "A unilateral contract consists of a promise on the part of the offeror and performance of the requisite terms by the offeree." *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 583, 790 P.2d 124 (1990). A bilateral contract is an exchange of promises. *Govier v. N. Sound Bank*, 91 Wn. App. 493, 499, 957 P.2d 811 (1998). The fundamental difference between a unilateral contract and a bilateral contract is the method of acceptance. *Multicare Med. Ctr.*, 114 Wn.2d at 584. In a unilateral contract, " 'the offer or promise of the one party does not become binding or enforcible [sic] until there is performance by the other party.' " *Id.* (quoting *Higgins v. Egbert*, 28 Wn.2d 313, 317-18, 182 P.2d 58 (1947)). However, in a bilateral contract, " 'it is not performance which makes the contract binding, but rather the giving of a promise by the one party for the promise of the other.' " *Id.* (quoting *Higgins*, 28 Wn.2d at 318). Here, Mr. Flower promised to accept the position at Huntwood, sell his house, and move to Washington, while Mr. Hunt promised to terminate their relationship only for good cause. The exchange of these two promises formed a bilateral contract in April 2002.

¶15 We next determine whether the parties modified the contract when Mr. Flower signed the acknowledgment on May 13. "Mutual modification of a contract by subsequent agreement arises out of the intentions of the parties and requires a meeting of the minds." *Jones v. Best*, 134 Wn.2d 232, 240, 950 P.2d 1 (1998). "Without a mutual change of obligations or rights, a subsequent agreement

lacks consideration and cannot serve as modification of an existing contract." *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 499, 663 P.2d 132 (1983). Additionally, mutual assent is required; one party may not unilaterally modify a contract. *Jones*, 134 Wn.2d at 240. The burden of proving that the parties intended to modify the earlier agreement rests upon the party asserting the modification. *Hanson v. Puget Sound Navigation Co.*, 52 Wn.2d 124, 127, 323 P.2d 655 (1958).

¶16 The acknowledgment in this case did not change Mr. Flower's promise to work for Huntwood, but it did rescind Huntwood's promise to terminate him only for cause. The change in obligations was therefore not mutual. Because there was no consideration, no modification of the for-cause employment contract was effected.

¶17 Huntwood argues that the parol evidence rule applies to the May 13 acknowledgement as a fully integrated document. Prior or contemporaneous agreements merge into the final written contract, and any of these are rendered immaterial by operation of the parol evidence rule. *Equitable Life Leasing Corp. v. Cedarbrook, Inc.*, 52 Wn. App. 497, 505, 761 P.2d 77 (1988). The rule forbids the use of parol evidence to add to, subtract from, modify, or contradict the terms of a fully integrated contract. *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 32, 959 P.2d 1104 (1998). There are a number of problems with Huntwood's assertion of the parol evidence rule under these facts.

¶18 First, the parol evidence rule does not bar evidence offered to contradict receipts, acknowledgments, or other writings that are not contracts. *Johnson v. Peterson*, 43 Wn.2d 816, 820, 264 P.2d 237 (1953); *Hopkins v. Barlin*, 31 Wn.2d 260, 268, 196 P.2d 347 (1948). " 'The burden of proving a contract, whether express or implied, is on the party asserting it, and he must prove each essential fact, including the existence of a mutual intention.' " *Bogle & Gates, P.L.L.C. v. Zapel*, 121 Wn. App. 444, 448, 90 P.3d 703 (2004) (quoting *Bogle & Gates, P.L.L.C. v. Holly Moun-*

*tain Res.*, 108 Wn. App. 557, 560, 32 P.3d 1002 (2001)).
" 'The essential elements of a contract are "the subject
matter of the contract, the parties, the promise, the terms
and conditions, and (in some but not all jurisdictions) the
price or consideration." ' " *Zapel*, 121 Wn. App. at 448-49
(quoting *Holly Mountain Res.*, 108 Wn. App. at 561 (quoting
*DePhillips*, 136 Wn.2d at 31)). Here, Huntwood has not met
its burden to prove, nor has it made an effort to prove, that
the "Employee Receipt and Acknowledgment of Employee
Handbook" is a contract at all rather than a mere receipt. It
cannot show that it modified the parties' earlier agreement.

¶19 Second, the parol evidence rule applies only
to a writing intended by the parties as an integrated and
final expression of the terms of their agreement. *Emrich v.
Connell*, 105 Wn.2d 551, 556, 716 P.2d 863 (1986). The parol
evidence rule does not apply to subsequent agreements.
JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 3-2, at
136 (3d ed. 1987).

> "[W]hen a second contract deals with the same subject matter
> as did the first contract made by the same parties, but does not
> state whether or to what extent it is intended to operate in
> discharge or substitution . . . [t]he two contracts must be inter-
> preted together. In so far as they are inconsistent, the later one
> prevails; the remainder of the first contract, being quite con-
> sistent with the second in substance and in purpose may be
> enforced."

*Lynch v. Higley*, 8 Wn. App. 903, 911, 510 P.2d 663 (1973)
(alterations in original) (quoting 6 ARTHUR LINTON CORBIN,
CORBIN ON CONTRACTS § 1293, at 198 (1962)); *see also Higgins*,
123 Wn.2d at 165-66 (holding that a subsequent contract
made by the same parties and covering the same subject
matter, although containing inconsistent terms, has the
legal effect of rescinding the earlier contract). The parol
evidence rule "should not be applied to bar proof that might
vary or contradict a written agreement unless and until the
court has first determined as a matter of fact that the parties
intended the written agreement to be a complete integra-
tion of the parties' agreement." *Cont'l Ins. Co. v. Paccar,*

*Inc.*, 26 Wn. App. 850, 858, 614 P.2d 675 (1980), *rev'd on other grounds*, 96 Wn.2d 160, 634 P.2d 291 (1981).

¶20 "The touchstone of contract interpretation is the parties' intent." *Tanner Elec. Coop. v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). In Washington, we apply the context rule. *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). Under this analytical framework, the intent of the parties may be discerned from the actual language of the agreement, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties. *Tanner*, 128 Wn.2d at 674.

¶21 Viewing the evidence in the light most favorable to Mr. Flower, there is, at a minimum, a question of fact as to whether the parties intended the May 13 acknowledgement to be a final expression of a fully integrated agreement. In fact, there is evidence to suggest that the June 4 terms of employment agreement was the final agreement between the parties and the express at-will agreement was eliminated by merger into the final terms of employment agreement that contained no reference to the express at-will agreement. *See Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241, 248, 450 P.2d 470 (1969). The question of whether a merger of oral and written terms occurred is a question for the trier of fact. *Ban-Co Inv. Co. v. Loveless*, 22 Wn. App. 122, 587 P.2d 567 (1978); *Olsen Media v. Energy Scis., Inc.*, 32 Wn. App. 579, 584, 648 P.2d 493 (1982).

¶22 Furthermore, the integration-type clause in the acknowledgement should not be given effect. "[A] boilerplate clause stating that the contract is not modified or affected by other verbal or written agreements of the parties . . . will not be given effect where it appears that the provision was factually false." *Lyall v. DeYoung*, 42 Wn. App. 252, 257-58, 711 P.2d 356 (1985). When there is "material parol evidence [to show] that outside agreements

were relied upon[,] . . . those parol agreements should be given effect rather than permit boilerplate to vitiate the manifest understanding of the parties." *Id.* at 258. In that case, "use of the boilerplate would otherwise amount to constructive fraud." *Id.* The acknowledgement in this case provides, "I understand that no contract of employment has been expressed or implied and that no circumstances arising out of my employment will change my 'at-will' employment relationship." CP at 277. Here, the parties did enter into a contract.

¶23 Alternatively, if there was no valid contract between the parties based on the April negotiations, Mr. Flower argues, promissory estoppel applies. The doctrine of promissory estoppel can be used as a " 'sword' " in a cause of action for damages. *McCormick v. Lake Wash. Sch. Dist.*, 99 Wn. App. 107, 117, 992 P.2d 511 (1999) (quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259, 616 P.2d 644 (1980)). There are five recognized elements of a promissory estoppel claim: "(1) a promise, (2) that promisor should reasonably expect to cause the promisee to change his position, and (3) actually causes the promisee to change his position, (4) justifiably relying on the promise, (5) in such a manner that injustice can be avoided only by enforcement of the promise." *Id.* Here, Mr. Hunt promised Mr. Flower that his employment with Huntwood would last as long as Mr. Flower did not engage in gross misconduct. Mr. Hunt could reasonably expect that his promise would cause Mr. Flower to sell his home and to move to Spokane. Relying on the promise of this employment relationship, Mr. Flower acted as expected and changed his position. Thus, injustice can be avoided only by enforcing the promise of employment for at least one year. *See* RCW 19.36.010 (setting forth application of statute of frauds); *Klinke*, 94 Wn.2d at 259 (quoting *In re Estate of Nelson*, 85 Wn.2d 602, 610-11, 537 P.2d 765 (1975)). Mr. Flower has, at a minimum, raised an issue of fact as to the alternate theory of promissory estoppel.

¶24 As another alternative cause of action, Mr. Flower asserts an action for negligent misrepresentation. In so

doing, he argues that, if his other claims fail, then Mr. Hunt negligently misrepresented his promise that Mr. Flower would not be fired without cause in order to persuade him to agree to take the position.

¶25 In Washington, we apply the *Restatement of Torts* standard. *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 150, 787 P.2d 8 (1990). Under this rule:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)); *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 161-62, 744 P.2d 1032, 750 P.2d 254 (1987).

¶26 Huntwood claims that Mr. Flower cannot show that any alleged false representations were made as to a presently existing fact, as he must, rather than a promise for future conduct. It claims Mr. Flower's only allegation necessarily relates to future conduct—that Mr. Hunt would not fire Mr. Flower except for cause. It is not the fact that Huntwood ultimately failed to perform that forms the basis for this claim. *See Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 182, 876 P.2d 435 (1994). Rather, the present existing fact Mr. Flower alleges is this: contrary to the promises Mr. Hunt made when he made the job offer to Mr. Flower, Mr. Hunt did not intend for the employment relationship to be anything but at-will. "[I]f a promise is made for the purpose of deceiving and with no intention of performing," it may be actionable. *Sprague v. Sumitomo Forestry Co.*, 104 Wn.2d 751, 762, 709 P.2d 1200 (1985). It was this kind of promise—one "for the purpose of deceiving and with no intention of performing"—that Mr. Flower alleges.

¶27 Mr. Hunt testified that he would never hire an employee under a for-cause agreement. Yet, that is what

Mr. Flower claims that Mr. Hunt told him he would be. Mr. Flower has presented a genuine issue of fact as to whether Mr. Hunt had any intention of keeping his promise when it was made. Contrary to the trial court's determination, a plaintiff may properly base his claim of negligent misrepresentation on the terms of the defendant-employer's job offer. *See Chapman v. Mktg. Unlimited, Inc.*, 14 Wn. App. 34, 36, 539 P.2d 107 (1975).

¶28 The trial court improvidently granted summary dismissal of Mr. Flower's unlawful termination claim. The parol evidence rule does not apply to these facts. Mr. Flower has, at a minimum, presented a question of fact as to whether the parties intended the June 4 agreement to be a final expression of a fully integrated agreement and the parties' for-cause agreement survived by merger. Mr. Flower's alternative theories of promissory estoppel and negligent misrepresentation may be presented at trial.

2. Denial of summary judgment for signing bonus

¶29 Mr. Flower asserted a cause of action for recovery of the $10,000 signing bonus that was included in the terms of his employment. Huntwood maintains that the $10,000 bonus was an "expense" and that the agreement requires that it be repaid if he "leaves company employment" within a year. CP at 271. Because Mr. Flower left within a year of hire, Huntwood argues, he was not then entitled to the bonus. Mr. Flower asserts that the bonus was not an expense, but a wage; he did not leave, he was fired.

¶30 Interpretation of a contract is generally a determination of fact; "it is the process that ascertains the meaning of a term by examining objective manifestations of the parties' intent." *Denny's Rests., Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 201, 859 P.2d 619 (1993). But "[i]nterpretation of a contract provision is a question of law when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can

be drawn from the extrinsic evidence." *Tanner*, 128 Wn.2d at 674. Here, the contract provides:

> (2) *Moving allowance* total $20,000 (includes moving allowance $10,000 and signing bonus $10,000—combination thereof. All *moving expenses* over $10,000 reduce *signing bonus*).
>
> . . . .
>
> (7) If Wes leaves company employment under 1 year, he agrees to pay back *expenses*.

CP at 271 (emphasis added). Review of these provisions does not require the use of extrinsic evidence. The $10,000 signing bonus was to be reduced only by those moving expenses that exceeded $10,000. Moving expenses were under $8,200. The contract collectively refers to the moving expenses and signing bonus as a "moving allowance." But expenses were distinguished from the bonus. The signing bonus was not an expense that required repayment. Whether Mr. Flower quit or was fired is not then relevant to this issue. Mr. Flower was entitled, as a matter of law, to the $10,000 signing bonus. He sought attorney fees and exemplary damages under RCW 49.48.030 and RCW 49.52.070. He is entitled, as a matter of law, to both.

¶31 Under RCW 49.48.010, an employer must pay an employee who was discharged or quit at the end of the regularly established pay period. Failure to do so is a misdemeanor. RCW 49.48.020. An employee who obtains a judgment for a violation of RCW 49.48.010 is entitled to reasonable attorney fees. RCW 49.48.030.

¶32 Attorney fees under RCW 49.48.030 are recoverable in actions for lost wages for breach of an employment contract. *Gaglidari v. Denny's Rests., Inc.*, 117 Wn.2d 426, 450, 815 P.2d 1362 (1991). That includes any actions for wages, i.e., moneys due " 'by reason of employment.' " *Hayes v. Trulock*, 51 Wn. App. 795, 806, 755 P.2d 830 (1988) (quoting RCW 49.46.010(2)). *See also Hanson v. City of Tacoma*, 105 Wn.2d 864, 872, 719 P.2d 104 (1986) ("RCW 49.48.030 provides reasonable attorney fees *in any action* in which a person is successful in recovering judg-

ment for wages or salary owed."). Statutory attorney fees under this provision must be construed liberally in favor of the employee as a remedial statute to protect employee wages and assure payment. *Bates v. City of Richland*, 112 Wn. App. 919, 939, 51 P.3d 816 (2002) (citing *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 34, 42 P.3d 1265 (2002)). Such a construction requires that exceptions be narrowly defined. *Bates*, 112 Wn. App. at 939 (citing *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees of Peninsula*, 130 Wn.2d 401, 407, 924 P.2d 13 (1996)). Attorney fees are recoverable under RCW 49.48.030 even if there exists a bona fide dispute between employer and employee. *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 181, 588 P.2d 729 (1978).

¶33 Here, Mr. Flower sought to enforce a bonus provision of an employment contract. There is no doubt that the bonus was to be paid "by reason of employment." It was therefore wages. Mr. Flower is entitled to attorney fees under RCW 49.48.030 as a matter of law.

¶34 RCW 49.52.050(2) makes it a misdemeanor for an employer who "[w]ilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." As a civil penalty for such a violation, RCW 49.52.070 makes the employer liable for "twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees." We also construe this statute liberally " 'to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages.' " *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 520, 22 P.3d 795 (2001) (quoting *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998)).

██ ¶35 There are two sets of circumstances in which an employer's failure to pay wages has been deemed by our courts as not willful: "the employer was careless or erred in failing to pay, or a 'bona fide' dispute existed between the employer and employee regarding the payment of wages." *Schilling*, 136 Wn.2d at 160. " 'Lack of intent may be established either by a finding of carelessness or by the existence of a bona fide dispute.' " *Id.* (quoting *Pope v. Univ. of Wash.*, 121 Wn.2d 479, 491 n.4, 852 P.2d 1055, 871 P.2d 590 (1993)). Here, Huntwood does not claim, nor does the evidence support a claim, that the failure to pay was an oversight.

██ ¶36 "An employer's nonpayment of wages is willful and made with intent 'when it is the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment.' " *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 849, 50 P.3d 256 (2002) (quoting *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 300, 745 P.2d 1 (1987)). In other words, the dispute over whether Huntwood owed the signing bonus to Mr. Flower must be "fairly debatable." *Schilling*, 136 Wn.2d at 161. In *Department of Labor & Industries v. Overnite Transportation Co.*, 67 Wn. App. 24, 34-36, 834 P.2d 638 (1992), Division One of this court held an employer's asserted legal argument for refusing to pay its truck drivers overtime wages—that state overtime wage laws were preempted by the federal Motor Carrier Act— was not fairly debatable. The same is true here. Huntwood contends there was a bona fide legal dispute, first, over whether the "bonus" was an "expense" under the contract and, second, whether Mr. Flower left the company under circumstances that would require Mr. Flower to repay the bonus. The terms of the contract clearly state that the bonus is to compensate Mr. Flower for signing on with the company. His act of taking the job entitled him to the bonus. The fact that Huntwood contrived a legal argument that the bonus was actually an "expense" does not make it a bona fide dispute. That is especially true since Mr. Hunt drafted the agree-

ment and chose the terms that he now claims are debatable. Any ambiguity is construed against Huntwood. *See Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 827, 410 P.2d 7 (1966).

¶37 The issue of whether an employer has acted willfully and with intent under RCW 49.52.070 is generally a question of fact. *Schilling*, 136 Wn.2d at 160; *Pope*, 121 Wn.2d at 490. However, where reasonable minds could reach but one conclusion from the evidence presented when the motion for summary judgment is heard, we may determine questions of fact as a matter of law. *Schilling*, 136 Wn.2d at 160. To hold Huntwood liable as a matter of law would require substantial evidence that it acted willfully and with the intent to deprive its employees of their wages. *See Wingert*, 146 Wn.2d at 849. We do not apply a particularly stringent test to determine whether there was willful failure to pay wages; it means that the failure to pay was volitional or that the employer " 'knows what he is doing, intends to do what he is doing, and is a free agent.' " *Schilling*, 136 Wn.2d at 160 (quoting *Brandt v. Impero*, 1 Wn. App. 678, 681, 463 P.2d 197 (1969)). Huntwood's implausible rationale for its failure to pay Mr. Flower's signing bonus supports a finding that there is substantial evidence of its willful and intentional deprivation of this payment. The facts show Huntwood's withholding of these wages to be deliberate.

¶38 The trial court erred in granting summary dismissal of Mr. Flower's claim for the $10,000 signing bonus. In fact, it was error to deny Mr. Flower's cross-motion for summary judgment on this straight-forward contract. Mr. Flower is entitled to attorney fees for Huntwood's failure to pay the $10,000 signing bonus it owed as wages to Mr. Flower under RCW 49.48.030. An award of double damages and attorney fees under RCW 49.52.070 is also appropriate for Huntwood's willful and intentional deprivation of wages. Attorney fees are due on both the trial and appellate levels.

### 3. Discovery

¶39 A trial court is afforded broad discretion to implement controls on the discovery process to permit full disclosure of relevant information while guarding against harmful side effects. *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 232, 654 P.2d 673 (1982), *aff'd*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). Discovery orders are reviewed for abuse of discretion that results in prejudice to a party or person. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 777, 819 P.2d 370 (1991). A trial court abuses its discretion when a ruling is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶40 In Washington, we recognize a "broad right of discovery which is subject to the relatively narrow restrictions of CR 26(c)." *Puget Sound*, 117 Wn.2d at 782. "This broad right of discovery is necessary to ensure access to the party seeking the discovery. It is common legal knowledge that extensive discovery is necessary to effectively pursue either a plaintiff's claim or a defendant's defense." *Id.*

¶41 A party from whom discovery is sought may make a motion "and for good cause shown . . . the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." CR 26(c). "Good cause" is established by showing that any of the harms listed in the rule are threatened and can be avoided without impeding the discovery process. *Rhinehart*, 98 Wn.2d at 256. Here, the harms threatened by a duplication of a deposition claimed by Huntwood are insufficient cause for the discovery restrictions imposed on Mr. Flower's right to discovery.

¶42 Huntwood requested the protective order on the basis that the information sought in the CR 30(b)(6) deposition—which was noted on the heels of a lengthy fact deposition of Huntwood's president—was already obtained

in the president's deposition. It suggested that the true reason behind the CR 30(b)(6) deposition was to appease one of Mr. Flower's co-counsel's dissatisfaction with the manner the other conducted the president's first deposition. Mr. Flower disputed that suggestion as fallacious and argued that the CR 30(b)(6) deposition was necessary to bind Huntwood, as a separate legal entity, to the answers Mr. Flower would obtain in the deposition.

¶43 A notice of deposition made pursuant to a party under CR 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice. Because CR 30(b)(6) and Fed. R. Civ. P. 30(b)(6) are nearly identical, "federal cases interpreting the federal rule are highly persuasive." *Casper v. Esteb Enters., Inc.*, 119 Wn. App. 759, 767, 82 P.3d 1223 (2004). The party seeking discovery need only "designate with reasonable particularity the matters on which examination is requested." CR 30(b)(6). Upon such a request, the corporation "must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding[1] answers on behalf of the corporation." *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

¶44 Here, Mr. Flower's deposition notice called for a CR 30(b)(6) designate who could testify to:

1. All discussions, negotiations, terms, offers, acceptance, and agreements concerning Mr. Flower's employment contract and/or arrangement with Huntwood Industries.

2. Mr. Flower's employment with Huntwood Industries.

3. Mr. Flower's employment performance at Huntwood Industries.

---

[1] It has not been clearly decided in Washington whether a corporation is absolutely bound to the testimony in a CR 30(b)(6) deposition as a judicial admission that ultimately decides an issue or if it is treated like any other testimony that may be contradicted through other corporate witnesses. *Casper*, 119 Wn. App. at 768. Nor are we asked to decide that here.

4. The reasons and circumstances regarding Huntwood Industries' termination of Mr. Flower.

5. Mr. Flower's entire personnel and employee file with Huntwood Industries.

6. Huntwood Industries['] personnel policies as to directing, supervising and evaluating employee duties, tasks and performance, and specifically, without limitation, as such pertain to Mr. Flower.

7. Huntwood Industries' financial and business performance for the years 2001, 2002 and 2003.

8. Huntwood Industries' counterclaims against Mr. Flower, including all facts regarding liability and damages.

CP at 44.

¶45 These matters were sufficiently specific and clear. Mr. Flower's argument is properly grounded in the differences between fact depositions and CR 30(b)(6) depositions. A Rule 30(b)(6) deponent testifies as to the knowledge of the corporation and the corporation's subjective beliefs and opinions and interpretation of documents and events. *United States v. Taylor*, 166 F.R.D. 356, 360, *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996). A fact witness testifies as to his individual knowledge and gives his personal opinions. A person can be both a fact witness and a CR 30(b)(6) witness. CR 30(b)(6) expressly states that it does not preclude a deposition by any other procedure. "Thus, a party who wishes the deposition of a specific officer . . . may still obtain it." 8A CHARLES A. WRIGHT ET. AL, FEDERAL PRACTICE AND PROCEDURE § 2103, at 36 (2d ed. 1994). A corporation may not avoid a CR 30(b)(6) deposition by designating a certain individual and then object to the taking of that person's deposition as being wasteful or duplicitous. *In re Air Crash Disaster at Detroit Metro. Airport*, 130 F.R.D. 627, 630-31 (E.D. Mich. 1989).

¶46 We reject Huntwood's claim that a CR 30(b)(6) designee would have nothing to add to its president's fact deposition. "[A] claimed lack of knowledge does not provide sufficient grounds for a protective order; the other side is allowed to test this claim by deposing the witness." *Amherst*

*Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 122 (D. Conn. 1974). In fact, Mr. Flower pointed out a number of matters which Mr. Hunt could not answer in his deposition. Appellant's Reply Br. at 23. CR 30(b)(6) obligates Huntwood to prepare one or more witnesses so that they may give knowledgeable, complete, and nonevasive answers on behalf of the corporation. *Casper*, 119 Wn. App. at 767; *Marker*, 125 F.R.D. at 126. An individual employee's lack of personal knowledge is irrelevant: the organization must provide a witness to "testify as to the matters known or reasonably available to the organization." CR 30(b)(6).

¶47 Furthermore, the controls placed on Mr. Flower's discovery improperly inhibited his right to discovery. Answers to interrogatories are an inadequate substitute for deposition testimony pursuant to Rule 30(b)(6). *Marker*, 125 F.R.D. at 126. The court abused its discretion by granting a protective order.

CONCLUSION

¶48 We reverse the trial court's summary dismissal of Mr. Flower's claims and remand for trial. The protective order concerning Huntwood's CR 30(b)(6) deposition is reversed. We also reverse the trial court's denial of Mr. Flower's summary judgment motion for recovery of the $10,000 signing bonus. We remand for entry of judgment in Mr. Flower's favor for the signing bonus and double damages for a total of $20,000, and for calculation of attorney fees and costs expended to recoup the signing bonus before the trial court as well as on appeal.

KATO, C.J., and SWEENEY, J., concur.

Review denied at 156 Wn.2d 1030 (2006).