90 P.3d 703 (2004)
121 Wash.App. 444
BOGLE & GATES, P.L.L.C., a Washington professional limited liability company, Respondents,
v.
John ZAPEL, an individual, Appellant.
No. 51876-3-I.
Court of Appeals of Washington, Division 1.
May 3, 2004.
*704 Frank R. Siderius, Siderius Longergan & Martin, Sea., WA., for Appellant.
Michael A. Goldfarb, Law Office of Michael Goldfarb, Sea., WA., for Respondents.
GROSSE, J.
Ex parte writings may bring a contract within the six-year statute of limitations if they contain all the elements of a contract, including the promise of the party to be charged. Here, a law firm's retention letter, which confirmed an oral agreement, did not express a promise by the firm's client, and thus the letter did not satisfy the writing requirement for purposes of the six-year statute. Because the three-year statute for oral agreements applied to bar the firm's contract claim, we vacate the award of summary judgment and remand for further proceedings.

FACTS
This case differs from Bogle & Gates, P.L.L.C. v. Holly Mountain Resources, Ltd.,[1] only with respect to the name of the defendant. In that case, we set forth the following facts:
In June 1993, John Zapel, David Zapel, and Holly Mountain Resources were named as defendants in an action filed by Peter Rees for trespass to timber. John Zapel, who is the president of Holly Mountain Resources, hired Bogle & Gates to represent him and the other named parties in the Rees litigation. After an initial meeting, Bogle & Gates sent John Zapel a letter memorializing the agreement. The letter, which is dated July 16, 1993, states in part:
We wish to thank you for retaining Bogle & Gates and confirm our agreement to represent you and your brother in the Rees matter. Based upon our meeting, it is our understanding that Bogle & Gates will prepare an answer to Rees' complaint, attempt to negotiate a settlement and, if necessary, defend you in the litigation. We will report to you at Holly Mountain Resources[.]
Clerk's Papers at 128. The letter also contained the hourly rate of the lead attorney for the representation, and referenced the firm's Standard Terms of Representation, a preprinted booklet enclosed with the letter. The Standard Terms of Representation contains a thorough description of the law firm's billing processes and payment terms, scope of representation, retainers and trust accounts, confidentiality, termination of services and the firm's reservation of the right to pursue collection and recover its attorney fees thus incurred, in the event of nonpayment of fees for the representation. The letter encouraged Zapel to read the booklet thoroughly and to contact the firm if he had any questions. "Absent such questions, we will assume that the Standard Terms of Representation, as supplemented by this letter, will apply to our representation." Id.

Bogle & Gates provided legal services to the named parties from July 1993 to some time in 1995. Meanwhile, in October 1993, David Zapel's liability insurer, State Farm, consented to Bogle & Gates' continued representation of David Zapel, and agreed to pay half the legal fees for the overall representation. Ultimately, Bogle & Gates negotiated a settlement that was acceptable to the parties.
Bogle & Gates sent several invoices to Holly Mountain Resources throughout 1994 and 1995, the first of which is dated August 31, 1994. On May 19, 1995, Bogle & Gates sent a final invoice to John Zapel and Holly Mountain Resources, totaling $43,143.46. Deducted from this total were State Farm's one-half share in the sum of *705 $21,089.98, which it had paid, and a payment received from Holly Mountain Resources on January 6, 1995 in the sum of $1,000, leaving $20,089.98 outstanding. Neither John Zapel nor Holly Mountain Resources paid this outstanding sum. Bogle & Gates filed a notice of intent to withdraw, on June 23, 1995.
Bogle & Gates filed this action [against Holly Mountain Resources] on December 10, 1998, alleging breach of contract, quantum meriut [sic], and promissory estoppel. Holly Mountain Resources filed a motion for summary judgment, contending that Bogle & Gates' action was barred by the three-year statute of limitations (RCW 4.16.080(3)). The trial court concluded that the three-year statute, rather than the six-year statute ( RCW 4.16.040(1)), governed, and thus dismissed the action against Holly Mountain Resources. Bogle & Gates filed a motion for reconsideration, which was denied.[2]
On appeal, this court held that Bogle & Gates' suit was time-barred because the contract between the law firm and Holly Mountain Resources was oral, not written.[3]
While the suit against Holly Mountain Resources was pending, Bogle & Gates sued John Zapel in his individual capacity for the unpaid fees. Both parties filed cross-motions for summary judgment. Zapel argued for dismissal on the same ground that his corporation asserted in the earlier appeal: the contract with Bogle & Gates was oral and the suit was barred by the three-year statute of limitations. Bogle & Gates responded that the six-year statute applied for two reasons. First, the retention letter it sent to Zapel constituted a written contract; and second, the suit was based on an account receivable, which is also subject to a six-year statute of limitations.[4]
The trial court granted Bogle & Gates' motion for summary judgment and its motion for attorney fees. This appeal followed.

DISCUSSION
Zapel assigns error to the trial court's conclusion that the six-year limitation period applied to the contract claim. We exercise de novo review on appeal from summary judgment.[5]
RCW 4.16.040(1) provides that an "action upon a contract in writing, or liability express or implied arising out of a written agreement" must commence within six years. RCW 4.16.080(3) provides that a non-written contract-based action must commence within three years.
"`The burden of proving a contract, whether express or implied, is on the party asserting it, and he must prove each essential fact, including the existence of a mutual intention.'"[6] "The essential elements of a contract are `"the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all jurisdictions) the price or consideration."'"[7] "`A written agreement for purposes of the 6-year statute of limitations must contain all the essential elements of the contract, and if resort to parol evidence is necessary to establish any essential element, then the contract is partly oral and the 3-year statute of limitations applies.'"[8] "Ex *706 parte writings are sufficient to bring a contract within the 6-year statute of limitations if the writing contains all of the elements of a contract."[9]
Bogle & Gates argues that its letter to Zapel contained all the elements necessary to satisfy the writing requirement for purposes of the six-year statute of limitations. Specifically, the law firm notes that its letter contained:
 Subject matter and parties: "We wish to ... confirm our agreement to represent you and your brother in the Rees matter."
 Promise: "Bogle & Gates will prepare an answer to Rees' complaint, attempt to negotiate a settlement and, if necessary defend you in the litigation."
 Terms and conditions: "Absent ... questions, we will assume that the [enclosed] Standard Terms of Representation, as supplemented by this letter, will apply to our representation."
 Price: "Our charges ... will be billed on a time basis. My current hourly rate is $165 per hour."
To support its argument, Bogle & Gates quotes a passage from the majority opinion in Holly Mountain Resources, which declared that the retention letter constituted a written contract:
In this case, the retention letter is addressed to John Zapel alone, and confirms that Bogle & Gates will represent John and David Zapel.... [T]he letter and Standard Terms of Representation together satisfy the writing requirement for purposes of the contract between Bogle & Gates and the Zapels in their individual capacities....[10]
Zapel argues to the contrary that the ex parte letter is insufficient to establish a written contract because it omits several elements. Zapel relies on the analysis in Judge Appelwick's partial dissent in the earlier case, which concluded that the letter failed to create a written contract with anyone:
I do not view the letter and Standard Terms of Representation as creating a written agreement with anyone. Nor do I agree that the letter and Standard Terms of Representation have all of the essential elements of a contract in writing. Nowhere is the promise or assent of the party to be charged evidenced in the writings. The Zapels neither authored, signed, nor acknowledged the writings authored by Bogle & Gates. Without agreement of the client, there is no written instrument or written agreement. The letter itself acknowledges an already existing oral agreement. The letter purports to supplement the clients' understanding of what Bogle & Gates does as a standard matter. It does not purport to supersede the oral agreement. It merely memorializes what Bogle & Gates understood it had agreed to the day before. The writings are merely ex parte memoranda related to an oral contract, nothing more.
...
[Unlike Kloss, t]he case before us does not involve a written offer on terms different from the oral contract. It does not involve a unilateral written contract offered by Bogle & Gates and accepted by performance of the client. It does not involve a writing sought to be enforced against the party who drafted or executed it.
Bogle & Gates cannot by the letter and its enclosure unilaterally convert the oral agreement into a written agreement governed by the six-year statute of limitations. Contract law does not allow it.[11]
We believe this to be the correct analysis. "Manifestly, a promise clearly obligating a contracting party is of the very essence of a contract, and when such promise is not expressed in the writing, plainly one of its most important essentials is wanting."[12] The law *707 firm's letter and Standard Terms of Representation did not express or imply a promise by Zapel, and Bogle & Gates failed to show any other writing in which Zapel expressed or implied a promise. Thus, the letter and Standard Terms of Representation did not satisfy the writing requirement, and the six-year statute of limitations in RCW 4.16.040(1) did not apply. We conclude that the three-year limitations period in RCW 4.16.080(3) applied to bar the law firm's contract claim.
To be sure, the majority's reasoning was correct as to the corporate defendant in the earlier caseHolly Mountain Resources did not write the letter confirming the oral agreement, and no agreement between the corporation and Bogle & Gates could be implied without resort to extrinsic evidence.[13] But because the majority had no cause to decide whether a written contract existed between the law firm and Zapel, its conclusion on that point was dictum and we accord it no weight.
Bogle & Gates argues alternatively that it sued on an account receivable. RCW 4.16.040(2) provides that such a suit must commence within six years. In its opposition and cross-motion for summary judgment, Bogle & Gates did argue for summary judgment based on an account receivable claim. But its argument focused primarily on the simple fact that it sued within the six-year limitations period. As to the merits of the claim, Bogle & Gates only asserted that it
issued regular invoices for services rendered in the Kitsap County action. The final invoice was issued on May 19, 1995. (Exh. D) In that letter from Bogle & Gates to John Zapel, Jim Johnston [a Bogle & Gates attorney] encloses the final invoice and notes that State Farm has paid its portion of the bills. (Exh. D)
Obviously, this argument begged the question of whether Zapel was in fact liable on the account receivable. In his reply papers, Zapel succeeded in establishing this question as a genuine issue of material fact. Zapel correctly noted that "[a]ny claim that this lawsuit is based `upon an account receivable incurred in the ordinary course of business'... requires an examination of Bogle & Gates [sic ] treatment of this receivable." Further, he asserts that "Bogle & Gates at all times treated the `account' as that of Holly Mountain Resources, Ltd."
Viewing the facts in the light most favorable to Zapel, and drawing all reasonable inferences in his favor, we must conclude that Bogle & Gates failed to establish the absence of a genuine issue as to whether Zapel was individually liable on the account receivable. Thus, we decline to uphold the award of summary judgment based solely on the account receivable claim.
Nevertheless, Bogle & Gates may yet be able to prove this claim against Zapel. Therefore, we vacate the award of summary judgment and attorney fees, and remand for further proceedings related to the account receivable claim. At the conclusion of those proceedings, the trial court shall award attorney fees in a manner that abides the result on remand and credits reasonable attorney fees and costs in connection with Zapel's successful prosecution of this appeal.
WE CONCUR: APPELWICK and BAKER, JJ.
NOTES
[1] 108 Wash.App. 557, 32 P.3d 1002 (2001).
[2] Holly Mountain Resources, 108 Wash.App. at 558-60, 32 P.3d 1002.
[3] Holly Mountain Resources, 108 Wash.App. at 562, 32 P.3d 1002.
[4] RCW 4.16.040(2).
[5] When reviewing an order of summary judgment brought under CR 56, this court engages in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The reviewing court considers the facts in the light most favorable to the nonmoving party. Summary judgment is appropriate if the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).
[6] Holly Mountain Resources, 108 Wash.App. at 560, 32 P.3d 1002 (quoting Cahn v. Foster & Marshall, Inc., 33 Wash.App. 838, 840, 658 P.2d 42 (1983)).
[7] Holly Mountain Resources, 108 Wash.App. at 561, 32 P.3d 1002 (quoting DePhillips v. Zolt Constr. Co., 136 Wash.2d 26, 31, 959 P.2d 1104 (1998)).
[8] Holly Mountain Resources, 108 Wash.App. at 560, 32 P.3d 1002 (quoting Cahn, 33 Wash.App. at 840-41, 658 P.2d 42).
[9] Kloss v. Honeywell, Inc., 77 Wash.App. 294, 298, 890 P.2d 480 (1995) (written employment contract found where, although ex parte memoranda lacked an express compensation term, reasonable compensation term was implicit in the writings).
[10] Holly Mountain Resources, 108 Wash.App. at 561-62, 32 P.3d 1002.
[11] Holly Mountain Resources, 108 Wash.App. at 564-65, 32 P.3d 1002 (Appelwick, J., dissenting in part).
[12] Levold v. Pederson, 130 Wash. 380, 386, 227 P. 510 (1924).
[13] See Holly Mountain Resources, 108 Wash.App. at 561-62, 32 P.3d 1002.