# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BUSINESS FINANCE CORP., a Washington corporation, | ) ) ) | No. 73407-5-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| VICTORIA KNOLL, THE ESTATE OF CRAIG KNOLL; THE UNKNOWN HEIRS OF CRAIG KNOLL, deceased; CONSTRUCTION MATERIALS INC., NORTHWEST, an inactive Washington Corporation; TRUSERV CORP., a Delaware corporation; JERRY V. KNOLL Individually, and the MARITAL COMMUNITY OF JERRY V. AND JANE DOE KNOLL; KNOLL GREENWATER LLC, a Washington limited liability company; STATE OF WASHINGTON, DEPARTMENT OF REVENUE, STATE OF WASHINGTON, DEPARTMENT OF LICENSING; INTERNAL REVENUE SERVICE OF THE UNITED STATES OF OF AMERICA and JOHN DOES 1-25, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) ) | FILED: May 23, 2016 |

SPEARMAN, J. — Jerry Knoll appeals the trial court's ruling that Business Finance Corporation (BFC) has the right to foreclose on real property owned by the Estate of Lorna Knoll. He asserts that the trial court erred in finding that the

Estate was a grantor under the deed of trust and in concluding that the deed was valid and enforceable. Finding no error, we affirm.

## FACTS

Lorna Knoll and her sons Craig and Jerry[1] owned four parcels of recreational property in Greenwater, Washington. The properties are referred to in this action as parcels A, B, C, and D. Lorna owned several other properties and also owned a substantial share of the family business, Knoll Lumber and Hardware. Craig served as the chief executive officer of Knoll Lumber and managed its operations. Jerry lived in Alaska. He owned a portion of Knoll Lumber but did not have an active role in the family business.

Lorna died in 1998. Lorna's will named Craig and Jerry co-executors of her estate. The will specified that if either co-executor was unable or ceased to act the other was to act as sole executor. Craig and Jerry submitted Lorna's will to probate and were appointed co-personal representatives of her estate.[2] Craig acted as the primary manager of the estate. The estate remained open for the next several years.

Lorna's estate owned 64 percent of Greenwater parcels A and B and 100 percent of parcel D. Her will devised this interest to Craig and Jerry in equal shares. Craig and Jerry each owned 18 percent of parcels A and B. Craig and his wife Victoria owned 100 percent of parcel C. Parcel C is not at issue in this case.

---

[1] We refer to members of the Knoll family by their first names to avoid confusion. No disrespect is intended.

[2] In the context of this case, the terms "executor" and "personal representative" are interchangeable. Both apply to the person or persons appointed to administer an estate. RCW 11.02.005(4).

In 1999, Craig obtained financing for Knoll Lumber from BFC. Under a loan and security agreement, BFC agreed to advance up to $1.5 million to Knoll Lumber. Craig and Victoria personally guaranteed the loan. They granted BFC a security interest in their personal residence and in several other properties, including Greenwater parcels A, B, C, and D. The properties securing the loan are listed in an attachment to the loan agreement. Some of the listed properties were owned entirely by Craig and Victoria while others were owned in whole or in part by Lorna's estate.

As further collateral under the loan agreement, Craig and Victoria executed deeds of trust. The first paragraph of the deed of trust encumbering the Greenwater parcels states that the deed is executed by "CRAIG T. KNOLL and VICTORIA W. KNOLL, husband and wife, as to Parcel C and their undivided interest in Parcels A, B and D. . . ." Clerk's Papers (CP) at 30. The deed states that the grantors "hereby bargain, sell and convey" parcels A, B, C, and D to BFC. The signature block at the end of the deed identifies "The Estate of Lorna L. Knoll" as a grantor. The language following Craig's signature states that he signed as "Personal Representative of the Estate of Lorna L. Knoll and Individually." CP at 34.

Knoll Lumber filed bankruptcy in March 2000. The business had no assets and the bankruptcy was abandoned. Craig and Victoria, as personal guarantors of Knoll Lumber's obligation, executed two promissory notes to BFC. The promissory notes were secured by the previously executed deeds of trust. Craig

3

and Victoria defaulted on the promissory notes and declared bankruptcy in December 2001.

Jerry brought an adversary action against Craig and Victoria in bankruptcy court. Jerry asserted that Craig, with Victoria's help, had fraudulently transferred property belonging to Lorna's estate and breached fiduciary duties to the estate. Jerry sought an accounting, an injunction prohibiting Craig from transferring further estate property, and payment of his portion of Lorna's estate.

In their answer to Jerry's complaint, Craig and Victoria alleged that they had fully informed Jerry of the transactions with BFC and Jerry did not object. Craig and Victoria asserted that they had encumbered only their own property or property they had authority to encumber. They also alleged that Jerry had neglected and abandoned any role in managing Lorna's estate.

Jerry settled with Craig and Victoria in June 2002. Under the settlement, the parties agreed that Lorna's estate owned Greenwater parcels A and B. Craig and Victoria agreed to remove all encumbrances from those parcels and transfer them to a limited liability company (LLC) in which Craig and Jerry would own equal shares. The settlement was later amended to include parcel D.

Craig died soon after reaching the settlement with Jerry. At the time of his death, Lorna's estate was still open. The Greenwater parcels were still encumbered and had not been transferred into an LLC.

BFC pursued litigation against Victoria seeking payment on the obligation. BFC and Victoria reached a settlement agreement that was approved by the bankruptcy court in March 2003. The agreement discounted Victoria's total

obligation to BFC and set new interest and repayment terms. Victoria filed a plan of reorganization with the bankruptcy court in July 2003. The plan allowed Victoria seven months to market various pieces of real property and pay her debt to BFC from the proceeds. If not paid within seven months, BFC had the right to foreclose against the secured properties.

Victoria paid BFC a portion of her debt and in May 2004 the bankruptcy court set her obligation to BFC at $162,182.61. BFC received a payment of $10,000 in May 2004 and a payment of $32,800 in January 2005. BFC received no payments after January 2005.

In May 2010, BFC brought this action to foreclose on Craig's interest in the Greenwater parcels and on the estate's 64 percent interest in parcels A and B and 100 percent interest in parcel D. Jerry defended, arguing that BFC did not have the right to foreclose on property owned by Lorna's estate. The case proceeded to a bench trial in December 2014. The dispute turned on whether Lorna's estate was a grantor under the deed of trust and, if so, whether Craig had authority to encumber estate property without the consent of Jerry as co-personal representative.

BFC argued that Lorna's estate was a grantor. In addition to the language of the deed and the related loan agreement, BFC relied on the pleadings in the adversary action between Craig and Jerry. BFC further argued that Craig was authorized to act as sole personal representative of the estate because Jerry was not a Washington resident and had never appointed a resident agent.

5

Jerry argued that Lorna's estate was not a grantor under the deed of trust. He argued that the plain language of the deed indicated that Jerry assigned only his own interest. He also argued that, even if Craig intended to pledge estate property, he had no authority to do so without Jerry's approval as co-personal representative.

As support, Jerry relied on the deed of trust conveying another estate property to BFC. The Monroe Farm deed, which was executed about the same time as the Greenwater deed, identifies the Estate of Lorna Knoll as a grantor in the first paragraph and is signed by both Craig and Jerry as co-personal representatives. Jerry argued that the Monroe deed demonstrates that BFC was aware that Craig was only one of two co-personal representatives and that Craig lacked authority to pledge estate property without Jerry's consent. Jerry also contended that BFC's claim was time barred. He argued that the three-year statute of limitations applied because BFC introduced parol evidence to prove an essential term of the contract.

At the close of evidence, Jerry moved to dismiss, arguing that BFC's action was time barred even under the six-year statute of limitations. Jerry argued that BFC did not present sufficient evidence to prove that Victoria voluntarily made a payment in January 2005 and thus tolled the statute of limitations. The trial court denied the motion.

The trial court found that the estate was a grantor under the deed of trust. The court concluded that Craig was the only qualified personal representative of Lorna's estate and that his signature as personal representative was legally

sufficient to bind the estate. The court also concluded that the six-year statute of limitations applied and BFC's claim was not time barred. The court thus ruled that BFC had the right to foreclose on the estate's interest in parcels A, B, and D. Jerry appeals.

## DISCUSSION

Jerry challenges the trial court's finding that Lorna's estate was a grantor under the deed of trust. We review findings of fact for substantial evidence and review conclusions of law de novo. Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). Interpretation of a deed of trust is a mixed question of fact and law. Niemann v. Vaughn Community Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005). In construing a deed, our aim is to give effect to the intent of the parties. Id. (citing Harris v. Ski Park Farms, Inc., 120 Wn.2d 727, 739, 844 P.2d 1006 (1993)). The intent of the parties is a question of fact, the legal consequences of that intent are a question of law. Id. (citing Veach v. Culp, 92 Wn.2d 570, 573, 599 P.2d 526 (1979)). If the language of the deed is ambiguous, we may consider extrinsic evidence to determine the parties' intent. Id.

Jerry argues that the trial court drew a conclusion of law in determining that Lorna's estate was a grantor. But whether Lorna's estate was a grantor is a question of fact that depends on the intent of the parties. To answer that question, the trial court looked to the language of the deed of trust and extrinsic evidence. The trial court properly characterized the ruling as a finding of fact. We review the trial court's finding for substantial evidence.

7

The first paragraph of the deed of trust does not identify Lorna's estate as a grantor:

> THIS DEED OF TRUST, made this 1st day of Sept., 1999, between CRAIG T. KNOLL and VICTORIA W. KNOLL, husband and wife, as to Parcel C and their undivided interest in Parcels A, B, and D, GRANTORS, ..., and BUSNESS [sic] FINANCE CORPORATION, a Washington corporation, BENEFICIARY....

CP at 30. The deed states that the grantors "hereby bargain, sell and convey" parcels A, B, C, and D to BFC. CP at 30. The signature block at the end of the document identifies Lorna's estate as a grantor:

> "GRANTORS"
> THE ESTATE OF LORNA L. KNOLL
>
> By: _____s/_____
>      Craig T. Knoll
> Its:   Personal Representative of the Estate of
>      Lorna L. Knoll and Individually
>
> _____s/_____
> Victoria W. Knoll, Individually and as
> spouse of Craig T. Knoll

CP at 34.

The language of the deed supports the trial court's finding that Lorna's estate was a grantor. The signature block identifies Lorna's estate as a grantor. The deed describes Craig as signing both in his personal capacity and as personal representative of the estate. In addition, the deed grants BFC an interest in parcel D, which was owned entirely by Lorna's estate.

The record also included the extrinsic evidence produced by both parties. Jerry produced the Monroe Farm deed in support of his argument that Lorna's estate was not a grantor under the Greenwater deed. But BFC produced the loan

8

agreement, which lists the Greenwater parcels, including parcel D, among the collateral for the loan. BFC also relied on the pleadings in the adversary action between Craig and Jerry, which indicate that both brothers understood that Craig granted BFC a security interest in estate property.

There was conflicting evidence before the trial court. But the language of the deed of trust, the loan agreement, and the pleadings in the action between Jerry and Craig support BFC's argument that Craig as personal representative pledged estate property as security for the BFC loan. We conclude that substantial evidence supports the trial court's finding that Lorna's estate was a grantor.

Jerry next argues that, even if Lorna's estate was a grantor under the deed of trust, the deed is not enforceable because Craig did not have authority to pledge estate property without Jerry's consent as co-personal representative. The trial court concluded as matters of law that Jerry was not a qualified co-personal representative of Lorna's estate, Craig was authorized to act without Jerry's consent, and the deed was valid. We review conclusions of law de novo. Sunnyside Valley, 149 Wn. 2d at 879-80.

Co-personal representatives of a nonintervention estate are subject to the same laws as co-trustees. RCW 11.68.095. One co-trustee alone may not encumber trust property unless the other co-trustee consents or delegates his power. RCW 11.98.070; Cornett et al. v. West, 102 Wash. 254, 261, 173 P.44 (1918). A person who is not an in-state resident may be appointed as personal

representative "if [he] appoints an agent who is a resident of the county where such estate is being probated..., upon whom service of all papers may be made . . . ." RCW 11.36.010(6).

The parties dispute whether Jerry was qualified to act as personal representative of Lorna's estate. BFC argues that, because Jerry was not a Washington resident and did not appoint a resident agent, he was never qualified to act as co-personal representative. Jerry does not dispute that he was at all times a resident of Alaska, but he argues that residence in Washington is only a condition of appointment, not a qualification for serving as a personal representative. Jerry also argues that because service of all papers could be made on Craig, Jerry's status as a nonresident was not relevant. RCW 11.36.010(6).

This dispute turns on interpretation of RCW 11.36.010 and related statutes. We review questions of statutory interpretation de novo. Pham v. Corbett, 187 Wn. App. 816, 831, 351 P.3d 214 (2015) (citing State v. Wentz, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). In interpreting statutes, our aim is to discern and implement the Legislature's intent. Id. (citing State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). Legislative intent may be discerned from the statutory scheme as a whole. Id. (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

RCW 11.36.010 addresses qualifications for serving as personal representative. Under the statute, minors, persons of unsound mind, and persons convicted of a felony or a crime of moral turpitude are not qualified to act as

10

personal representative. RCW 11.36.010(1). The statute instructs the court to revoke the appointment of any personal representative who becomes disqualified by becoming of unsound mind or being convicted of a serious crime. RCW 11.36.010(5). Subsection (6) addresses the appointment of a person who is not a resident of the state:

> (6)  A nonresident may be appointed to act as personal representative if the nonresident appoints an agent who is a resident of the county where such estate is being probated or who is an attorney of record of the estate, upon whom service of all papers may be made; such appointment must be made in writing and filed by the clerk with other papers of such estate;...

By stating that a nonresident may act as personal representative if he or she appoints a resident agent, subsection (6) creates a condition under which a nonresident may act as personal representative. RCW 11.36.010 does not specifically identify failure to comply with the resident agent requirement of subsection (6) as a disqualification. But the conditional language of the subsection and the location of the subsection in a statute that address qualifications indicate that a nonresident who does not comply is not qualified.

Related statutes support this reading. An "executor" under the probate code is a "personal representative." RCW 11.02.005(4).  In describing the qualifications of an executor, RCW 11.28.040 refers to absence from the state as a "disqualification." Compliance with RCW 11.36.010(6) is necessary for a nonresident to "qualify" as an executor:

> If the executor be a minor or absent from the state, letters of administration with the will annexed shall be granted, during the time of such minority or absence, to some other person unless there be another executor who shall accept the trust, in which case the estate shall be administered by such other executor

11

> until the disqualification shall be removed, when such minor,
> having arrived at full age, or such absentee, having returned,
> shall be admitted as joint executor with the former, provided a
> nonresident of this state may qualify as provided in RCW
> 11.36.010.

RCW 11.28.040 (emphasis added). Under RCW 11.28.040, absence from the state is a "disqualification" and a nonresident must appoint a resident agent as stated in RCW 11.36.010(6) to "qualify." Reading the statutes together, we conclude that RCW 11.36.010(6) creates a qualification that a nonresident must meet in order to serve as a personal representative.

We conclude that, because Jerry was a nonresident and he did not comply with the requirement to appoint a resident agent, Jerry was not qualified to act as personal representative. But Jerry argues that any lack of qualification is moot because the probate court appointed him to act as personal representative. He argues that once appointed by the court a personal representative retains his authority until removed by the court.

Jerry relies on RCW 11.28.250, which instructs the court to remove a personal representative who is "permanently removed from the state." But RCW 11.28.040, quoted above, provides that when an executor is absent from the state the other executor may administer the estate until the out of state person returns.

Similarly, RCW 11.28.050 addresses the authority of a remaining executor when a co-executor is not qualified to act. The statute provides that:

> [w]hen any of the executors named shall not qualify or having
> qualified shall become disqualified or be removed, the remaining
> executors shall have the authority to perform every act and

12

> discharge every trust required by the will, and their acts shall be effectual for every purpose.

RCW 11.28.050 (emphasis added). The statute confers authority on the remaining executors to act without participation of a co-executor who is removed or disqualified. Use of the word "or" indicates that disqualification, without removal by the court, suffices to allow a remaining executor to act independently. This provision is not consistent with Jerry's argument that, once appointed, a personal representative retains authority until removed by the court.

Jerry asserts that RCW 11.28.050 applies only to co-executors who have not been appointed by the probate court or who, having been appointed, are subsequently removed. Reply Brief at 6. But this reading ignores the plain language of the statute, which addresses co-executors who, "having qualified," either "become disqualified" or are "removed." Jerry also argues that a disqualified co-executor must retain authority until removed by the probate court to avoid uncertainty concerning who is authorized to administer the estate. But because the language of RCW 11.28.050 is clear and unambiguous we enforce the statute as written. Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). We conclude that under RCW 11.28.050 a qualified co-executor is authorized to act on behalf of the estate when a co-executor becomes disqualified even if the court has not acted to remove the disqualified co-executor.

Jerry next asserts that BFC is making an impermissible collateral attack on the probate court's order appointing him as personal representative. He argues that BFC could have challenged Jerry's appointment in probate court but

is precluded from challenging Jerry's authority as personal representative here. Reply Brief at 8-10.

Jerry relies primarily on Anderson v. Anderson, 52 Wn.2d 757, 761, 328 P.2d 888 (1958), which states that a court order "is not open to contradiction or impeachment by parties or privies by a collateral attack . . . ." (Quoting Baskin v. Livers, 181 Wash. 370, 374, 43 P.2d 42 (1935)). But the collateral attack doctrine is not applicable in this case. BFC's first dealings with the Knoll family occurred over a year after Jerry's appointment as co-personal representative. BFC was thus not a party to the order appointing Jerry and not in privity with any of the parties to the order.

Jerry also argues that collateral estoppel bars BFC from challenging Jerry's authority as personal representative. Jerry asserts that, because BFC was aware that Jerry was a co-personal representative and did not challenge his appointment in probate court, it is estopped from asserting the challenge here. Jerry relies on Hackler v. Hackler, 37 Wn. App. 791, 683 P.2d 241 (1984). In that case, this court held that a person "who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party." Id. at 795 (quoting Bacon v. Gardner, 38 Wn.2d 299, 229 P.2d 523 (1951), Hackler is inapposite because BFC was not a witness to the action appointing Jerry as co-personal representative or involved with the action in any manner. Collateral estoppel does not apply to bar BFC's claim.

14

Jerry next argues that the trial court erred in dismissing his statute of limitations defenses. He first challenges the trial court's conclusion that the six-year statute of limitations applies in this case. A six-year statute of limitations applies to actions on written agreements, including deeds of trust and promissory notes. Walcker v. Benson and McLaughlin, P.S., 79 Wn. App. 739, 741, 904 P.2d 1176 (1995) (citing RCW 4.16.040). A three-year statute of limitations applies to actions on oral agreements. RCW 4.16.080(3).

For the six-year statute of limitations to apply, a written agreement "must contain all the essential elements of the contract." Bogle & Gates, P.L.L.C. v. Zapel, 121 Wn. App. 444, 449, 90 P.3d 703 (2004) (quoting Bogle & Gates, P.L.L.C. v. Holly Mountain Resources, 108 Wn. App. 557, 560, 32 P.3d 1002 (2001)). The essential elements of a contract are subject matter, parties, promise, terms and conditions, and in some jurisdictions, price. Id. The party asserting a contract must also prove a "mutual intention on the part of the parties to contract with each other." Ross v. Raymer, 32 Wn.2d 128, 137, 201 P.2d 129 (1948) (citing Troyer v. Fox, 162 Wash. 537, 298 P. 733 (1931)).

If a written contract does not contain an essential element and parol evidence is necessary to establish that element, the contract is partly oral and the three-year statute of limitations applies. Zapel, 121 Wn. App. at 449. But "[p]arol evidence admitted to interpret the meaning of what is actually contained in a contract does not alter the terms contained in the contract." DePhillips v. Zolt Const. Co., Inc., 136 Wn.2d 26, 32, 959 P.2d 1104 (1998). The use of parol

15

evidence to interpret written terms does not remove a written contract from the six-year statute of limitations. Id.

Jerry argues that BFC introduced parol evidence to prove that the estate was a grantor. But here, the writing of the deed of trust identified the grantors in the first paragraph and in the signature block. The parties introduced parol evidence to interpret that writing, not to supply a missing element.

Similarly, Jerry argues that BFC relied on parol evidence to prove the intent of the contracting parties. He asserts that mutual intention is an essential element, and BFC's use of parol evidence to prove intent removes the action from the six-year statute of limitations. Jerry relies on Zapel, in which this court stated that a person asserting a contract "must prove each essential fact, including the existence of a mutual intention." Bogle & Gates, P.L.L.C.,121 Wn. App. at 449 (quoting Zapel, 108 Wn. App. at 560).

Jerry confuses two distinct issues. The existence of a mutual intention to enter into a contract is an essential element. Ross, 32 Wn.2d at 137. But the intent of the parties as to written terms is a question of interpretation, and resorting to parol evidence to resolve that issue does not remove a written contract from the six-year statute of limitations. DePhillips, 136 Wn.2d at 32. We conclude that the six-year statute of limitations applies.

Jerry next argues that BFC's claim was time barred even under a six-year statute of limitations. When at least one payment has been made on a contract obligation, the statute of limitations begins to run from the last payment, provided that the payment was voluntarily made "'by the party against whom the payment

16

is invoked as tolling the statute.'" Sanders v. Brown, 123 Wash. 611, 612, 212 P. 1070 (1923) (quoting J. M. Arthur & Co. v. Burke, 83 Wash. 690. 145 Pac. 974 (1915)). See RCW 4.16.270. The burden of proving that a voluntary payment was made rests on the party seeking to extend the statute of limitations. Wickwire v. Reard, 37 Wn.2d 748, 751 226 P.2d 192 (1951) (citing J. M. Arthur & Co., 83 Wash. 690).

Jerry challenges the trial court's findings of fact concerning the payment received in 2005. He argues that the trial court erred in finding that Victoria made a voluntary payment on the loan obligation in January 2005 because BFC did not prove that Victoria, and not someone other than her, had made the payment.

The record included evidence that Knoll Lumber went bankrupt, had no corporate assets, and the bankruptcy was abandoned. After the demise of Knoll Lumber, BFC dealt with Craig and Victoria and entered into settlements with them. After Craig's death in 2002, all of BFC's dealings were with Victoria. BFC entered into a settlement agreement with Victoria. The bankruptcy court approved a plan of reorganization requiring Victoria to pay BFC from the proceeds of properties owned by Victoria. Victoria made payments to BFC in 2003 and 2004. BFC's president testified that the money paid on the Knoll Lumber obligation in 2005 was obtained from the proceeds of a sale of real property. The only evidence before the court was that Victoria made payments on the Knoll Lumber obligation to BFC and that Victoria was selling property in order to satisfy the debt to BFC. There was no evidence that any other person

17

undertook these obligations. We conclude that substantial evidence supports the trial court's finding that Victoria made the 2005 payment to BFC.

Jerry next argues that BFC's action is based on Victoria's obligation under the two promissory notes. He argues that the consolidation of the debt by the bankruptcy court is irrelevant because the two promissory notes were never merged. Jerry asserts that even if Victoria made a payment in 2005, that payment applied to only one promissory note and the other promissory note was outside the statute of limitations.

This argument is without merit because the 2003 settlement agreement is a subsequent contract that subsumes the previous notes. Although the settlement does not explicitly state that it replaces or merges the promissory notes, it sets Victoria's obligation to BFC and establishes new interest and payment terms. "[T]he legal effect of a subsequent contract made by the same parties and covering the same subject matter, but containing inconsistent terms, rescinds the earlier contract." In re Estate of Wimberley, 186 Wn. App. 475, 505, 349 P.3d 11 (2015) (citing Higgins v. Stafford, 123 Wn.2d 160, 165-66, 866 P.2d 31 (1994) rev. denied, 183 Wn.2d 1023, 355 P.3d 1153 (2015).

We conclude that the trial court did not err in rejecting Jerry's statute of limitations defenses. The six-year statute of limitation applied, the statute was tolled until January 2005, and BFC's action was timely.

The trial court did not err in ruling that BFC was entitled to foreclose on the portion of the Greenwater parcels owned by Lorna's estate. Substantial evidence supports the trial court's finding that the estate was a grantor under the deed of

trust. And the trial court properly concluded as a matter of law that, because Jerry was not qualified to act as co-personal representative of Lorna's estate, Craig was authorized to act as sole personal representative. The deed signed by Craig as personal representative of the estate is valid and BFC's action is not barred by the statute of limitations.

*Affirm.*

WE CONCUR: