IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of<br>LAWRENCE X. SULLIVAN,<br><br>  Deceased.<br><br>STAFFORD HEALTH SERVICES, INC.,<br>a Washington corporation, d/b/a<br>STAFFORD HEALTHCARE AT<br>BELMONT,<br><br>  Respondent/Third Party Defendant,<br><br>     v.<br><br>THE ESTATE OF LAWRENCE X.<br>SULLIVAN and THE LAWRENCE AND<br>ARLENE SULLIVAN LIVING TRUST<br>and DEANNA MERKATZ AND "JOHN<br>DOE" MERKATZ, individually and the<br>marital community comprised thereof,<br><br>  Appellants/Third Party Plaintiffs. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 77166-3-I<br><br>DIVISION ONE<br><br><br><br><br><br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: November 26, 2018 |

SCHINDLER, J. — Stafford Health Services Inc. (SHS) filed a creditor's claim for nursing services and care against the Estate of Lawrence X. Sullivan. After the personal representative rejected the claim, SHS filed a Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, petition against the Estate and the Lawrence and Arlene Sullivan Living Trust (collectively, the Estate) and the personal representative of the Estate, Deanna Merkatz, individually. The Estate and Merkatz

filed counterclaims against SHS alleging violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and damages under the abuse of vulnerable adults act (AVA), chapter 74.34 RCW. The court dismissed the counterclaim for violation of the CPA and noneconomic damages under the AVA on a CR 12(b)(6) motion. On summary judgment, the court dismissed the claim for economic damages under the AVA. The court ruled the Estate must pay SHS under the terms of the "Admission and Financial Agreement" and unjust enrichment. The court awarded attorney fees and costs under the terms of the Agreement and TEDRA. We affirm but remand to enter findings of fact and conclusions of law on the reasonableness of the award of attorney fees and costs.

## FACTS

In 2013, 94-year-old Lawrence Sullivan lived at an assisted living facility, Crista Shores. Sullivan was admitted to the Harrison Medical Center emergency department on October 23 with "[s]epsis secondary to urinary tract infection," pneumonia, hypertension, and dementia. After nine days in the hospital, Sullivan improved and his "mental status" returned to "baseline." However, Sullivan was "weak and debilitated and unable to return to his prior assisted living arrangements." Harrison Medical Center discharged Sullivan to a skilled nursing facility, Stafford Health Services Inc. (SHS).

SHS admitted Sullivan for treatment and therapy on November 1. Sullivan's niece Deanna Merkatz signed the "Admission and Financial Agreement" as the "POA [(Power of Attorney)] or Responsible Party" and consented to nursing services. The Agreement states the "Resident has the right to consent or refuse medical care provided by the staff, consultants or physicians" and the "undersigned Resident (or the

undersigned responsible party on behalf of Resident)" consents to the "nursing services provided by" SHS. The Agreement states the "Resident or decision maker will be informed of the treatment options, risk and benefits of treatment and of no treatment."

Merkatz promised as the Responsible Party to pay for services provided by SHS and charges not covered by Medicare from "the Resident's income or resources legally available for payment of such obligations." The Admission and Financial Agreement states, in pertinent part:

> **THIRD PARTY PAYERS** - Where third party payers such as Medicare, Medicaid, or insurance pay some or all of the charges, the undersigned hereby agrees to pay the Resident's portion of the covered charges, all charges for any period the Resident is determined to be ineligible for the program involved, all charges which are chargeable to the Resident under any such program, and any balance not paid by third party payers. Stafford Healthcare cannot and does not guarantee that benefits will be paid by any third party or guarantee the Resident's eligibility for any programs.
>
> . . . .
>
> **RESPONSIBLE PARTY AGREEMENT:** The party who manages the Resident's financial affairs and has legal access to the Resident's income or resources available to pay for Facility services is required to sign this agreement in addition to the Resident and in signing this agreement represents that he/she actually manages the Resident's financial affairs and/or has access to the Resident[']s income or resources available to pay for Facility services.
>
> Without incurring personal liability for the Resident's financial obligations to Stafford Healthcare, the undersigned responsible party promises to pay for the items and services provided to the Resident by Stafford Healthcare, from the Resident's income or resources legally available for payment of such obligations. In the event that the undersigned fails to make timely payments from such sources in accordance with terms and conditions of the agreement, the undersigned shall be personally responsible for the amount past due, interest charges on the past due balance and penalties, including reasonable attorney's fees and costs.

On November 25, SHS nurse Prescilla Piete discussed Sullivan's "new baseline ADLs[1]" with Merkatz and Crista Shores employee Diana Allen. Piete explained that when Medicare coverage ends, Sullivan would be responsible for those costs.

> [Merkatz] stated that she was happy with [Sullivan] remaining in this facility with the possibility of . . . moving to a facility closer to her in Kirkland. [Allen] agreed that [Sullivan] needs more care than Crista Shores can offer. [Allen] & [Merkatz] will communicate with one another; disclosed to both that I was speaking to each of them & to keep the lines of communication open to best meet the needs of [Sullivan]. [Sullivan] still on Medicare with secondary Tricare for Life; explained to [Merkatz] that [Sullivan] will be private pay when Medicare coverage ends.

SHS determined Medicare would no longer pay benefits for physical and occupational therapy effective December 15. Nothing in the records indicated whether Sullivan could not make the decision to either assume responsibility to pay for the therapy after December 15 or decline to do so. On December 9, SHS employee Laney Beach provided an "Advance Beneficiary Notice" and "Notice of Medicare Non-Coverage" to Sullivan and explained the options to him. The Advance Beneficiary Notice states, in pertinent part:

> **NOTE: You need to make a choice about receiving these health care items or services.**
>
> It is not Medicare's opinion, but our opinion, that Medicare will not pay for the item(s) or service(s) described below. Medicare does not pay for all of your health care costs. Medicare only pays for covered items and services when Medicare rules are met. The fact that Medicare may not pay for a particular item or service does not mean that you should not receive it. There may be a good reason to receive it. Right now, in your case, **Medicare probably will not pay for —**
>
> **Items or Services:** [physical therapy] & [occupational therapy] skilled
>
> **Because:** Reached max potential will continue with restorative.

---

[1] Activities of daily living.

4

The purpose of this form is to help you make an informed choice about whether or not you want to receive these items or services, knowing that you might have to pay for them yourself.

The Advance Beneficiary Notice sets forth two options: "**Option 1. YES. I want to receive these items or services**" and "**Option 2. NO. I will not receive these items or services.**" Sullivan checked the box next to Option 2 and signed the Advance Beneficiary Notice. Sullivan also signed the Notice of Medicare Non-Coverage that states, "Services Will End: 12/14/2013."

On January 20, 2014, SHS contacted Merkatz about the outstanding amount due. Merkatz disputed the charges for $17,520. On January 28, Merkatz faxed SHS a copy of a "Durable Power of Attorney and Nomination of Guardian" signed by Sullivan and the "Acceptance of Appointment" as Sullivan's attorney-in-fact signed by Merkatz.

At the direction of Merkatz, SHS discharged Sullivan to Crista Shores on February 4. Crista Shores had to take additional steps to care for Sullivan, including hiring physical and occupational therapists. SHS sent Sullivan an invoice each month for the amount owed of $19,025 for services provided from December 15, 2013 to February 4, 2014.

Sullivan passed away in 2015. On May 22, 2015, the Estate sent a "Non-Probate Notice to Creditors" to SHS. SHS filed a creditor's claim for $19,025 against the Estate. On August 17, Merkatz acting as the personal representative of the Estate rejected the claim.

On September 14, SHS filed a Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, petition against the Estate of Lawrence X. Sullivan and

the Lawrence and Arlene Sullivan Living Trust (collectively, the Estate) and Deanna Merkatz individually.

The Estate and Merkatz filed counterclaims against SHS alleging violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and claims for damages under the abuse of vulnerable adults act (AVA), chapter 74.34 RCW. The counterclaim alleged filing the TEDRA petition against Merkatz individually was a deceptive act or practice in violation of the CPA and an abuse of process. The Estate and Merkatz alleged financial exploitation under the AVA.

SHS filed a CR 12(b)(6) motion to dismiss the counterclaim for violation of the CPA and the claim for noneconomic damages under the AVA. SHS asserted the counterclaim did not allege a cause of action under the CPA. SHS argued filing the TEDRA petition against Merkatz individually and as the personal representative of the Estate is not an unfair or deceptive practice that impacts the public interest under the CPA. SHS argued that because Merkatz is not a statutory beneficiary, as a matter of law she is not entitled to noneconomic damages under the AVA. The court granted the CR 12(b)(6) motion to dismiss the counterclaim for violation of the CPA and the counterclaim for noneconomic damages under the AVA.

SHS filed a motion for summary judgment dismissal of the counterclaim for economic damages under the AVA. SHS argued billing for the services provided to Sullivan is not financial exploitation under the AVA. The court granted the motion and dismissed of the counterclaim against SHS for economic damages under the AVA.

SHS filed a second motion for summary judgment on the claim against the Estate and Merkatz for the amount owed under the terms of the Admission and Financial

Agreement and unjust enrichment. SHS argued it was entitled to payment of $19,025 for the care of Sullivan from December 15, 2013 to February 4, 2014. In opposition, the Estate and Merkatz argued the Notice of Medicare Non-Coverage was an invalid " 'contract' extension for care." Merkatz asserted she was not responsible for payment under the Admission and Financial Agreement. SHS argued the Notice of Medicare Non-Coverage did not modify the terms of the Admission and Financial Agreement.

The court dismissed the claim against Merkatz individually. The court ruled under the terms of the Admission and Financial Agreement and unjust enrichment, the Estate must pay SHS for services from December 15 to February 4. The court ordered the Estate to pay $19,025 with interest "both under the contract and based upon unjust enrichment."

SHS filed a motion for attorney fees and costs against the Estate under the terms of the Admission and Financial Agreement and TEDRA, RCW 11.69A.150. The court entered an order awarding SHS $44,426.94. The court did not enter findings of fact on the amount of fees. The order states the award is "against all defendants jointly and severally other than Deanna Merkatz, who shall have no responsibility for payment."

ANALYSIS

A. CR 12(b)(6) Dismissal

The Estate and Merkatz contend the court erred by granting the CR 12(b)(6) motion to dismiss the counterclaim for violation of the CPA and the counterclaim for noneconomic damages under the AVA.

We review an order dismissing a claim under CR 12(b)(6) de novo. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). Dismissal under CR 12(b)(6) is

warranted only if we conclude, beyond a doubt, the plaintiff cannot prove " 'any set of facts which would justify recovery.' " Kinney, 159 Wn.2d at 842 (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998)). On a CR 12(b)(6) motion, the trial court must not consider testimony outside the pleadings. Brown v. MacPherson's, Inc., 86 Wn.2d 293, 297, 545 P.2d 13 (1975). "Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought." Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006); CR 8(a).

### 1. CPA Claim

The Estate and Merkatz claim filing a lawsuit against Merkatz individually to collect a "debt" is an unfair and deceptive act occurring in trade or commerce that "affects the public interest."

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 783, 719 P.2d 531 (1986). We liberally construe the CPA. RCW 19.86.920; Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009). "Any person who is injured in his or her business or property by a violation of" the CPA may file a civil action. RCW 19.86.090.

To establish a violation of the CPA, the plaintiff must prove (1) the defendant engaged in an unfair or deceptive act or practice, (2) the act occurred in trade or commerce, (3) the act impacts the public interest, (4) the plaintiff suffered injury to his or her business or property, and (5) the injury was causally related to the unfair or

deceptive act. Panag, 166 Wn.2d at 37. A plaintiff must establish all five elements to prevail on a CPA claim. Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

Whether the allegations in the complaint allege a CPA claim is a question of law that we review de novo. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997). In the counterclaim, the Estate and Merkatz do not allege that filing a TEDRA petition against Merkatz to obtain payment for health care services impacts the public interest.

To establish an act or practice impacts the public interest, the complaint must allege a real and substantial potential for repetition, " 'as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated.' " Michael v. Mosquera-Lacy, 165 Wn.2d 595, 604-05, 200 P.3d 695 (2009) (quoting Eastlake Constr. Co. v. Hess, 102 Wn.2d 30, 52, 686 P.2d 465 (1984)). In determining whether an alleged deceptive act or practice affects the public interest, the court evaluates four factors: (1) whether the alleged acts were committed in the course of defendant's business; (2) whether the defendant advertised to the public in general; (3) whether the defendant actively solicited this particular plaintiff, indicating potential solicitation of others; and (4) whether the plaintiff and defendant have unequal bargaining positions. Hangman Ridge, 105 Wn.2d at 790-91. These factors are not exclusive; no one factor is dispositive and it is not necessary that all factors be present. Hangman Ridge, 105 Wn.2d at 791.

The counterclaim alleges violation of RCW 19.86.093.[2] The counterclaim alleges, in pertinent part:

> Defendant Deanna Merkatz, individually, bears no liability and is not a proper party to the Plaintiff's Complaint. Suing Deanna Merkatz personally is an abuse of process and a deceptive act or practice in violation of the Consumer Protection Act. As a result she has incurred personal legal expenses and fees. She has suffered damages to her name and business.
>
> . . . .
>
> . . . The Plaintiff skilled nursing facility, and its Administrator, as to vulnerable adult Lawrence X. Sullivan, a dementia patient now-deceased, violated the Consumer Protection Act by engaging in unfair and deceptive acts or practices in the conduct of the Plaintiff's business subjecting Plaintiff and its Administrator to treble damages, litigation expenses, expert witness fees, and attorney fees incurred by Defendants.

The lawsuit filed by SHS to collect payment for services is a private dispute that does not impact the public interest. The counterclaim does not allege SHS advertised to the public, actively solicited Merkatz or Sullivan, or there was a "pattern of generalized course of conduct" creating a "real and substantial potential for repetition of defendant's conduct." Eifler v. Shurgard Capital Mgmt. Corp., 71 Wn. App. 684, 697, 861 P.2d 1071 (1993).

The Estate and Merkatz cite Panag to argue the SHS Admission and Financial Agreement impacts the public interest. Panag does not support their argument. In Panag, the Washington Supreme Court concluded unregulated debt collection could constitute a violation of the CPA "when a collection agency holds itself out as collecting

---

[2] RCW 19.86.093 states:

In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:
    (1) Violates a statute that incorporates this chapter;
    (2) Violates a statute that contains a specific legislative declaration of public interest impact; or
    (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.

10

a liquidated debt when, in fact, it is pursuing recovery of an unadjudicated insurance subrogation claim." Panag, 166 Wn.2d at 54-55. For the first time in the reply brief on appeal, the Estate and Merkatz argue filing the lawsuit against Merkatz individually impacts the public interest because the Admission and Financial Agreement violates 42 C.F.R. § 483.15(a)(3).[3] We do not consider arguments raised for the first time in the reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We conclude the court did not err by granting the CR 12(b)(6) motion to dismiss the counterclaim for violation of the CPA.

### 2. Noneconomic Damages under the AVA

We also conclude the court did not err in dismissing the counterclaim for noneconomic damages under CR 12(b)(6). The AVA establishes a cause of action to protect vulnerable adults from abandonment, abuse, financial exploitation, or neglect. RCW 74.34.200. RCW 74.34.210 allows a party to file a claim for noneconomic damages after the death of a vulnerable adult for the benefit of the decedent's beneficiaries as defined by RCW 4.20.020. RCW 74.34.210 states, in pertinent part:

> An action for damages under this chapter may be brought by the vulnerable adult, or where necessary, by his or her family members and/or guardian or legal fiduciary. The death of the vulnerable adult shall not deprive the court of jurisdiction over a petition or claim brought under this chapter. Upon petition, after the death of the vulnerable adult, the right to initiate or maintain the action shall be transferred to the executor or administrator of the deceased, for recovery of all damages for the benefit of the deceased person's beneficiaries set forth in chapter 4.20 RCW or if

---

[3] 42 C.F.R. § 483.15(a)(3) provides:

The facility must not request or require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may request and require a resident representative who has legal access to a resident's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the resident's income or resources.

> there are no beneficiaries, then for recovery of all economic losses
> sustained by the deceased person's estate.[4]

RCW 4.20.020 states:

> Every such action shall be for the benefit of the wife, husband, state
> registered domestic partner, child or children, including stepchildren, of the
> person whose death shall have been so caused. If there be no wife,
> husband, state registered domestic partner, or such child or children, such
> action may be maintained for the benefit of the parents, sisters, or
> brothers, who may be dependent upon the deceased for support, and who
> are resident within the United States at the time of his or her death.

In the answer and counterclaim, Merkatz identifies herself as the "niece of decedent." The niece of a decedent is "not among the beneficiaries on whose behalf the decedent's personal representative can maintain a cause of action." Tait v. Wahl, 97 Wn. App. 765, 769-70, 987 P.2d 127 (1999); RCW 4.20.020.

## B. Summary Judgment Dismissal

The Estate and Merkatz contend the court erred by granting summary judgment dismissal of the counterclaim for economic damages under the AVA and ordering the Estate to pay $19,025 for services provided from December 15, 2013 to February 4, 2014.

We review summary judgment de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). A party is entitled to summary judgment only if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Keck, 184 Wn.2d at 370. We engage in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. Owen v. Burlington N. Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d

---

4 Emphasis added.

1220 (2005). When reasonable minds could reach but one conclusion, summary judgment is appropriate. Owen, 153 Wn.2d at 788.

### 1. Economic Damages under the AVA

The Estate and Merkatz claim that because SHS financially exploited Sullivan, genuine issues of material fact preclude summary judgment on the claim for economic damages under the AVA.

The AVA protects vulnerable adults from financial exploitation. RCW 74.34.200. The Estate and Merkatz contend the Admission and Financial Agreement violates the AVA. RCW 74.34.020(7) defines "financial exploitation" as follows:

> [T]he illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult by any person or entity for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage.

The court interprets a statute de novo. In re Estate of Kissinger, 166 Wn.2d 120, 125, 206 P.3d 665 (2009). If the plain language is subject to only one interpretation, the inquiry ends. HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). The plain language of RCW 74.34.020(7) states that financial exploitation is the "illegal or improper use, control over, or withholding of the property" of a vulnerable adult for the advantage of a person or entity "other than for the vulnerable adult[ ]."

The Estate and Merkatz cannot show financial exploitation because the costs incurred for the nursing services and care were for Sullivan's "advantage." The undisputed record shows SHS provided room and board, restorative care, and nursing

13

services for 94-year-old Sullivan.[5]

## 2. Order To Pay SHS for Services

The Estate and Merkatz contend the court erred by granting summary judgment on the claim for $19,025. The Estate and Merkatz argue the charges accrued after Sullivan reached "maximum potential" under Medicare and there is a material issue of fact as to whether Sullivan was competent to agree to remain in the facility after Medicare coverage ended.

The interpretation of an unambiguous contract is a question of law and may be resolved by summary judgment. In re Estates of Wahl, 99 Wn.2d 828, 831, 664 P.2d 1250 (1983). Summary judgment as to a contract interpretation is proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning. GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014).

Below and on appeal, the Estate and Merkatz characterize the Advance Beneficiary Notice as a modification of the terms of the Admission and Financial Agreement. The Estate and Merkatz contend there are material issues of fact as to whether Sullivan was competent to sign and inform Merkatz of the modification.

The burden of proving modification of a contract is on the party asserting it. Flower v. T.R.A. Indus., Inc., 127 Wn. App. 13, 28, 111 P.3d 1192 (2005). One party may not unilaterally modify a contract. Jones v. Best, 134 Wn.2d 232, 240, 950 P.2d 1

---

[5] The federal and state regulations the Estate and Merkatz cite do not create a genuine issue of material fact. See WAC 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 ("nursing home" must determine whether resident has a surrogate decision maker); WAC 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 (nursing home must ensure informed consent for treatment); WAC 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(3) (nursing home resident has right to be informed of health status and to accept or refuse treatment); WAC 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(8) (prohibiting Medicare certified nursing facilities from charging for any item or service not requested by resident); 42 C.F.R. § 483.10(c) (resident of long term care facility has right to be informed of and participate in care); 42 C.F.R. § 483.15 (admission, transfer, and discharge rights of residents in long term care facilities).

(1998). "Mutual modification of a contract by subsequent agreement arises out of the intentions of the parties and requires a meeting of the minds." Jones, 134 Wn.2d at 240. " 'Without a mutual change of obligations or rights, a subsequent agreement lacks consideration and cannot serve as modification of an existing contract.' " Flower, 127 Wn. App. at 27-28 (quoting Ebling v. Gove's Cove, Inc., 34 Wn. App. 495, 499, 663 P.2d 132 (1983)).

The Advance Beneficiary Notice is not a " 'mutual change of obligations or rights' " under the Admission and Financial Agreement. Flower, 127 Wn. App. at 27-28 (quoting Ebling, 34 Wn. App. at 499). The Admission and Financial Agreement explicitly states that when Medicare coverage ended, Sullivan agreed to pay for SHS's services out-of-pocket. The Advance Beneficiary Notice informed Sullivan that Medicare coverage was ending and that he could elect to pay for further physical or occupational therapy or decide not to pay. Sullivan declined to pay for further therapies.

Under the plain and unambiguous language of the Advance Beneficiary Notice and Notice of Medicare Non-Coverage, Sullivan elected not to receive only physical therapy and occupational therapy. Merkatz signed the Admission and Financial Agreement as the "Responsible Party."[6] Merkatz consented and agreed as the Responsible Party to pay for "nursing services provided by" SHS. Merkatz agreed to pay SHS from Sullivan's "income or resources legally available for payment of such obligations." The plain and unambiguous language of the Admission and Financial Agreement states SHS accepts third party payment, including Medicare; and Merkatz

---

[6] The undisputed record shows SHS did not receive the Durable Power of Attorney documentation until January 28, 2014.

agreed to pay "all charges for any period [Sullivan] is determined to be ineligible for the program involved" and "any balance not paid by third party payers."

For the first time in the reply brief, the Estate and Merkatz cite 42 C.F.R. § 483.15(a)(3) to argue the Admission and Financial Agreement is void and unenforceable. Under RAP 9.12, we do not consider an argument that was not raised below on summary judgment. See also Cowiche Canyon, 118 Wn.2d at 809 (court will not consider issue raised for the first time in a reply brief).

We conclude the court did not err by granting summary judgment and ordering the Estate to pay SHS $19,025 under the Admission and Financial Agreement and unjust enrichment.

## C. Attorney Fees

The Estate and Merkatz contend the court abused its discretion by awarding SHS attorney fees and costs for time spent on the CPA and AVA counterclaims. The Estate and Merkatz contend the attorneys did not provide sufficient documentation of the work performed, legal invoices include inadmissible hearsay, and the court abused its discretion by including paralegal fees in the award without considering factors under Absher Construction Co. v. Kent School District No. 415, 79 Wn. App. 841, 845, 917 P.2d 1086 (1995).

We review the award attorney of fees and the reasonableness of the award for an abuse of discretion. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). We review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity. Gander, 167 Wn. App. at 647.

SHS is entitled to an award of attorney fees under the Admission and Financial Agreement:

> **ENFORCEMENT OF THIS AGREEMENT** - This agreement shall be governed by the laws of the State of Washington. . . . In the event of any dispute arising out of the payment or nonpayment of any funds due and owing pursuant to this Agreement, the substantially prevailing party shall be entitled to an award from the other party of its reasonable attorney's fees and costs . . . incurred at trial, arbitration, on appeal, or in bankruptcy proceedings, as well as reasonable attorney's fees and costs incurred in collecting any award or judgment.

The court also had discretion to award attorney fees under TEDRA. "RCW 11.96A.150 grants broad discretion to courts to award attorney fees 'in such manner as the court determines to be equitable' in 'all proceedings governed by this title.' " In re Estate of Berry, 189 Wn. App. 368, 379, 358 P.3d 426 (2015). The authority to award attorney fees and costs under RCW 11.96A.150 "is not limited to actions initiated under chapter 11.96A RCW." Berry, 189 Wn. App. at 379. Under RCW 11.96A.150(1), the court may consider "any and all factors that it deems to be relevant and appropriate." The court did not abuse its discretion by including fees and costs SHS incurred responding to the Estate and Merkatz's counterclaims.

However, we conclude the court erred in failing to enter findings of fact and conclusions of law on the award of fees. The trial court must enter findings of fact and conclusions of law supporting its decision to award fees. Mahler v. Szucs, 135 Wn.2d 398, 434-35, 957 P.2d 632 (1998). Because the trial court did not enter findings of fact and conclusions of law supporting the reasonableness of the award of attorney fees, we remand.

SHS requests attorney fees and costs on appeal under RAP 18.1(a). RAP 18.1(a) allows a party to recover attorney fees on appeal if allowed under the applicable

law.  Because SHS is entitled to fees under the terms of the Admission and Financial Agreement and TEDRA, RCW 11.96A.150, upon compliance with RAP 18.1, SHS is entitled to an award of attorney fees and costs on appeal.

We affirm but remand to enter findings of fact and conclusions of law on the reasonableness of the award of attorney fees and costs.

WE CONCUR: